In the Matter of the Estate of LOUISE HAFFNER, Deceased.

HERMINE BAIERLEIN, Appellant; FRIEDRICH HAFFNER, as Administrator, Respondent.

(Argued May 15, 1930; decided July 8, 1930.)

*Francis L. Driscoll* and *C. Campbell Hunicke* for appellant. As a matter of law the respondent was not the husband of the decedent. (*Hill* v. *Vrooman,* 215 App. Div. 847; 242 N. Y. 549; *Barnes* v. *Barnes,* 90 Iowa, 282; *Collins* v. *Collins,* 80 N. Y. 1; *Clayton* v. *Wardell,* 4 N. Y. 230; *Dietrich* v. *Dietrich,* 128 App. Div. 564; *Earle* v. *Earle,* 141 App. Div. 611; *McCullen* v. *McCullen,* 162 App. Div. 599; *Cartwright* v. *McGowan,* 121 Ill. 388; *O' Neil* v. *Davis,* 88 Ark. 196; *Collins* v. *Voorhees,* 47 N. J. Eq. 555; *Lanham* v. *Lanham,* 136 Wis. 360; *Lapsley* v. *Grierson,* 1 H. L. Cas. 498.)

*August P. Wagener* for respondent. The surrogate did not err in upholding the marriage between decedent and respondent as a valid common-law marriage. (*Graham* v. *Graham,* 211 App. Div. 580; *Collins* v. *Collins,* 80 N. Y. 1.) There was a good, valid and legal common-law marriage entered into between decedent and respondent. (*Matter of Crandall's Estate,* 214 App. Div. 363.)

HUBBS, J. On February 10, 1894, the respondent, Frederick Haffner, entered into a ceremonial marriage with Lilli Scholl, in Germany.

In 1895 the respondent's wife commenced an action against him in Germany for an absolute divorce. After the commencement of that action and in the same year, the respondent came to this country. The decree in that action granting a divorce to the plaintiff therein against the respondent was not entered until September 27, 1901. Before the entry of that decree and upon August 14, 1898, the respondent at Newark, N. J., entered into a ceremonial marriage with Marie Louise Stoll, thereafter known as Louise Haffner, the deceased herein. Before her marriage to the respondent, she had entered into a ceremonial marriage with Adolph Hauk at Camden, N. J. In March, 1900, Adolph Hauk procured a divorce from decedent in the State of Illinois. At the time, deceased was a resident of the State of New York. She was served by publication but never personally appeared in the divorce action in Illinois. That divorce decree was void as to her. (*Olmsted* v. *Olmsted*, 190 N. Y. 458.) Thereafter the said Adolph Hauk, deceased's first husband, died in 1921, a resident of the State of New Jersey.

It thus appears that in 1898 when respondent and deceased entered into a ceremonial marriage in New Jersey he had an undivorced wife living in Germany, and deceased had an undivorced husband living. Concededly the ceremonial marriage between respondent and deceased entered into on August 14, 1898, was void as both parties thereto had at the time a living spouse. In 1901 the divorce decree granted to respondent's first wife was entered in Germany. In 1924 said first wife died in Germany. The record does not contain a copy of the German decree. If we assume that it was a valid decree, the respondent and deceased were free to legally marry at any time after the death of deceased's first husband in 1921. In any event, the last obstacle to

their marriage was removed in 1924 by the death of respondent's first wife in Germany. The question for determination is whether the conduct of the parties, after all impediments to their legal marriage were removed, was such as to constitute a valid common-law marriage under the laws of this State. When respondent entered into the ceremonial marriage with deceased, he was twenty-nine years of age. He worked at his trade as a brewer in New York city. He and the deceased were thrifty and saved his earnings which were deposited in a savings bank in a joint account. About 1915 money was withdrawn from the account and invested in a rooming house. The savings from the income from the rooming house were placed in the savings bank joint account.

In 1921 they commenced to invest the savings from the joint account in bonds and mortgages upon real property. Between January, 1921, and May, 1926, three mortgages were taken in their names, as husband and wife. Thereafter, the deceased took three mortgages in her individual name but the money advanced therefor came from the joint account.

During the period from August 14, 1898, the date of the ceremonial marriage, until February 18, 1929, when deceased died, she and respondent had continuously lived and cohabited as husband and wife, and held each other out as bearing that relation. They never had any children. The record presents a picture of a frugal, hard-working German man and wife. It does not contain a suggestion of any trouble or improper conduct between the parties, other than the fact that their ceremonial marriage was illegal. Their conduct indicates their belief that they occupied the status of legally married persons.

Nothing in the record discloses their state of mind when they entered into the ceremonial marriage except the fact that they voluntarily entered into the solemn

obligations of the marriage relation under the form of a valid ceremonial marriage. Whether deceased believed that her first husband, who had run away with another woman and left her in New York, was dead, or whether she supposed that his conduct and the lapse of time had released her from that marriage, we do not know. Neither do we know whether the parties believed that the commencement of the divorce action by respondent's first wife in Germany had resulted in freeing him from that marriage.

We do know that the parties undertook by a formal ceremonial marriage to enter the legal relation of a man and wife. True their relation in the eyes of the law was illegal in violation of section 6 of the Domestic Relations Law (Cons. Laws, ch. 14), but it was not intended by the parties to be " meretricious in the sense that it was known to the parties to be immoral and unlawful, even if, as a matter of law, it was illegal and void." (*Matter of Crandall*, 214 App. Div. 363.)

Common-law marriages have been valid in this State since January 1, 1908, when chapter 742 of the Laws of 1907, which amended the Domestic Relations Law of 1896, as amended by chapter 339 of the Laws of 1901, became effective. (*Matter of Ziegler* v. *Cassidy's Sons*, 220 N. Y. 98; Domestic Relations Law of 1909, § 10.)

A common-law marriage is not required to be proved in any particular way. It is sufficient if the evidence establishes that legally competent parties *in præsenti* intended to become husband and wife and thereafter lived and cohabited as husband and wife. The ceremonial marriage evidenced the intent of the deceased and respondent to enter into a legal and honorable state of matrimony.

For thirty years they lived together as man and wife, holding themselves out as husband and wife. By toil and saving they accumulated a modest estate. They first deposited their savings in a savings bank in their

joint names under the belief that the survivor would take the account. Later they invested in real property mortgages taken in their joint names as husband and wife. Finally their joint funds were invested in mortgages taken in the name of the deceased. The appellant, a sister of the deceased, now seeks to deprive the respondent of all interest in the property standing in the name of the deceased and to remove him from the office of administrator of her estate. The appellant urges that the ceremonial marriage was void, that the relation of the parties was illicit and unlawful, and that such relation must be presumed to have continued in the absence of a new contract *in præsenti*, by which the parties agreed to become husband and wife by a common law marriage after the obstacles to a legal marriage were removed.

Under the facts in this case public policy and sound morals justified the learned Surrogate in deciding that a common law marriage took place when the parties were legally competent to enter into that relation. He so decided and his decision has been affirmed by the Appellate Division. We are satisfied that such decision was justified by the law and the facts. The conduct of the parties evidenced their intent to live in lawful wedlock after the impediments to their marriage were removed. Courts should not be solicitous to nullify such intent and decree the relation which they believed lawful to be unlawful and void. (*Leeds* v. *Joyce*, 202 App. Div. 696; affd., 235 N. Y. 620; *Matter of Wells*, 123 App. Div. 79; affd., 194 N. Y. 548; *Hynes* v. *McDermott*, 91 N. Y. 451; *Geiger* v. *Ryan*, 123 App. Div. 722; *Matter of Crandall, supra; Travers* v. *Reinhardt*, 205 U. S. 423; Common Law Marriage After Removal of Impediment to Valid Ceremonial Marriage, 12 Cornell Law Quarterly, 513.)

In the case of *Gall* v. *Gall* (114 N. Y. 109) Judge VANN, writing for a majority of this court, said: " It is sufficient if the acts and declarations of the parties, their reputation as married people and the circumstances surrounding

them in their daily lives, naturally lead to the conclusion that, although they began to live together as man and mistress, they finally agreed to live together as husband and wife." That was an action to admeasure dower and although intercourse between the parties was illicit in its inception and without the form of a ceremonial marriage, the court sustained a judgment which established a common-law marriage. The fact that there was a ceremonial marriage between the parties in the case at bar adds greatly to the contention of the respondent that a common law marriage existed between him and the deceased.

The appellant relies largely upon the case of *Matter of Hill* v. *Vrooman* (242 N. Y. 549), a case which arose under the Workmen's Compensation Law (Cons. Laws, ch. 67). The claimant and the deceased entered into illicit relations knowing and understanding that they were legally incompetent to enter into a contract of marriage, as the claimant had a husband living. The Appellate Division decided that the fact that they continued to cohabit claiming to be husband and wife after the death of the claimant's husband did not establish a common-law marriage. The decision was based upon the intent of the parties as disclosed by their conduct.

In the case at bar the Appellate Division has decided that the parties intended to live in a state of matrimony after the impediments to their marriage were removed. In the *Hill* case there was no ceremonial marriage at the inception of the relation evidencing an intention to live as husband and wife. On the contrary, the conduct of the parties conclusively established that they intended to enter into an immoral and illegal relation. That case is clearly distinguishable from the case at bar.

The order should be affirmed, with costs.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Order affirmed.