In the Matter of the Estates of FRANK J. FOELS and CHARLES J. FOELS, Deceased.

Surrogate's Court, Erie County, February 9, 1933.

*Corden T. Hackett,* for the executor.

*John S. Allan,* special guardian for infants, Raymond Frank Foels and Leonard John Foels.

*Charles J. Knoell,* for Henry Foels.

*Charles F..Boine,* for Helen Kaptur, the alleged widow.

HART, S.   Helen Kaptur (maiden name) claims to be the common-law wife of Frank J. Foels, who died in the city of Tonawanda, N. Y., on the 11th day of November, 1931, leaving a last will and testament, devising and bequeathing his entire estate to his sister, Lily D. Wendel, and his brother, Raymond Foels.

This decision will affect two estates, that of Frank J. Foels and that of his father, Charles J. Foels, in whose estate he had a vested remainder which was subject to the life use of Mary Foels, his mother.

It is undisputed that as the result of the relationship of Helen Kaptur and Frank J. Foels, two children were born, Raymond Frank Foels on March 6, 1923, and Leonard John Foels on April 5, 1924. Helen Kaptur claims the right to participate in the estate of Frank J. Foels, and also contends, through the special guardian, John S. Allan, and on behalf of her children, that they are entitled to share in the estate of their alleged grandfather, Charles J. Foels, as well as to contest the will of their alleged father.

The proof shows that this relationship commenced about nine or ten years prior to the death of the decedent.   At that time Helen Kaptur lived at 176 Broadway, Buffalo, N. Y., and here the first child was born.   There was proof that at this place and from this time on Frank J. Foels acknowledged Helen Kaptur as his wife, and that this child was one of their union, as was the other child also.   The birth certificates that are customarily made out by the attending physician, and filed pursuant to law with the bureau of vital statistics in that office, in Buffalo, N. Y., gave in each instance the name of the child as " Foels," as did the baptismal certificates. Doctor Anderson testified that he attended, along with a midwife, at the birth of the first child, and that the information and data necessary for the certificate to be filed with the bureau of vital statistics was furnished verbally by Frank J. Foels; that the second child was born at the Millard Fillmore Hospital, and that the usual information and data were also given verbally by Frank J. Foels, and the name of the second child was also given as " Foels."   The doctor further testified that some time before the alleged wife gave birth to the second child, she came to his office accompanied by Frank J. Foels, who said that his wife was in the " family way " and that he desired the doctor to look after her.

Within the period of the duration of this alleged common-law marriage, Helen Kaptur moved from and to several places in the city of Buffalo, and finally to Tonawanda, N. Y.   It was proven by an employee of the alleged father that in a visit to the light housekeeping apartment on Sycamore street, the said Frank J. Foels stated that that is where he lived, and acknowledged and held

out Helen Kaptur as his wife. There is also testimony to show that the deceased and Helen Kaptur visited various summer resorts, such as Crystal Beach, taking the children with them, and there is evidence by a barber that the children were brought to a barber shop by the deceased and Helen Kaptur together.

These facts, along with other testimony, constitute sufficient evidence of the acts and declarations of the parties, their reputation as married people and the circumstances surrounding them in their daily lives, acknowledgments, conduct, reputation among neighbors and relatives and the like, to prove a natural cohabitation.

There are some unusual and significant facts, however. The testimony by the brothers of Frank J. Foels, and the brother-in-law, who stated that during this period of years in which it is claimed that the deceased cohabited with Helen Kaptur, the decedent lived at 212 William street, Tonawanda, N. Y., with his mother and brothers, and slept there practically every night. There is an absence of proof that Frank J. Foels ever ate his meals in the various abodes provided for Helen Kaptur and their children, or that he slept there continuously, as one would expect a married man to do. In this connection the case is quite similar to *Gall* v. *Gall* (114 N. Y. 109), with the fact of the common-law marriage less doubtful because of fewer complications. In that case the alleged wife (plaintiff) was employed in the family as an ordinary servant until the death of Mrs. Gall, after which she continued to act in the same capacity for Mr. Gall. An intimacy sprang up between them which resulted in the birth of a daughter, and of whom Mr. Gall acknowledged himself to be the father. He moved the mother to a home in Brooklyn, where she lived with her mother, brother and sister, he himself living in a separate residence. Upon all of the facts in the case the jury rendered judgment establishing that she was the lawful wife by virtue of the relationship that existed between them. The Court of Appeals sustained the judgment.

It was said in *Hynes* v. *McDermott* (91 N. Y. 451, at p. 459): " The presumption of marriage, from a cohabitation, apparently matrimonial, is one of the strongest presumptions known to law. *This is especially true in a case involving legitimacy. The law presumes morality, and not immorality; marriage, and not concubinage; legitimacy, and not bastardy.* Where there is enough to create a foundation for the presumption of marriage, it can be repelled only by the most cogent and satisfactory evidence. In *Morris* v. *Davies* (5 Cl. & Fin. 163) Lord LYNDHURST, speaking of this presumption, says: ' The presumption of law is not lightly to be repelled. It is not to be broken in upon, or shaken by a mere balance of probability. The evidence for the purpose of repelling

it must be strong, distinct, satisfactory and conclusive.' In *Piers* v. *Piers* (2 H. L. Cas. 331) Lord CAMPBELL said that the presumption could be negatived only ' by disproving every reasonable possibility,' and Lord BROUGHAM, in the same case, approved the general doctrine stated by Lord LYNDHURST, in *Morris* v. *Davies*, and said that the presumption could be dispelled only by evidence which was ' clear, distinct and satisfactory.' The presumption has been acted upon in several cases in our own courts, and in some recent cases in England, which have a very direct bearing in support of the finding of the jury in this case." (See, also, *Matter of Grande*, 80 Misc. 450; *Matter of Haffner*, 254 N. Y. 238.)

I, therefore, find and decide that the marriage of Helen Kaptur and Frank J. Foels was a valid common-law marriage.

Let a decree enter accordingly.