19127

Mendel C. JEANES, Respondent, v. Mae B. JEANES, Appellant.
(177 S. E. (2d) 537)

*Isadore S. Bernstein, Esq.,* of Columbia, *for Appellant,*

*Messrs. Walter S. Monteith* and *J. Reese Daniel,* of Columbia, *for Respondent,*

November 11, 1970.

Bussey, Justice.

In this proceeding in the Richland County Court the respondent husband seeks to be relieved from liability for the payment of alimony in the amount of $75.00 per month to his divorced wife, the appellant. The parties were divorced by a decree of the said court on June 17, 1966, the husband being the plaintiff and winning a divorce from the wife on the ground of physical cruelty. Such decree relieved the husband of any obligation for the support and maintenance of the wife but left open for negotiation and settlement between the parties, through their respective attorneys, a division of their real and personal property.

The wife appealed, but before the appeal was perfected, attorneys for the parties reported to the court that an agreement had been reached with respect to the real and personal property and, that in reaching said agreement, it had been agreed that the husband would pay the wife the sum of $75.00 per month, towards her support and maintenance, to continue until the death of either of the parties or until the remarriage of the wife, whichever should sooner occur. The court thereupon issued a supplemental order approving the property settlement between the parties, the details of which do not appear in either the order or the record, and directing and ordering the husband to pay alimony to the wife in accordance with the above mentioned agreement, such as to alimony being set forth in the order in considerable detail.

In this proceeding, the petition of the husband alleged that the wife had remarried and that accordingly he was entitled to an order of the court relieving him from paying any further money for the support and maintenance of his former wife. The wife apparently entered a special appearance for the purpose of contesting the jurisdiction of the court, but has since abandoned such contention. In her return, she denied her remarriage. She also moved for a change of venue to the county of her residence, which motion was denied.

A hearing before the Honorable John A. Mason, Judge of the Richland County Court, was commenced on August 19, 1969, and on September 25, 1969, he issued his order granting the prayer of the petition and further ordering that the appellant wife be thereafter "deprived of the right to seek alimony, support, property settlement or benefits whatsoever from Mendel C. Jeanes, based upon the marriage" which theretofore existed. From such order the wife appeals upon fourteen exceptions.

In our view, a just, proper and equitable disposition of this appeal can be reached without dealing in any detail with appellant's numerous exceptions or a full discussion of all the questions, somewhat variously stated by the parties.

At the outset it should not even be necessary to state that actions for divorce or for separate support and maintenance are proceedings in equity. Any proceedings to modify or terminate orders or decrees in such actions are likewise within the jurisdiction of the court of equity. Contrary to one contention of the appellant, the fact that a decree for alimony was based upon an agreement of the parties does not defeat the jurisdiction of an equity court to make changes or modifications when the circumstances so justify. The agreement of the parties here as to alimony became merged in the supplemental decree and, therefore, lost its contractual nature, at least to the extent that the court has the power to modify the decree, if such modification be warranted. *Ex parte Jeter,* 193 S. C. 278, 8 S. E. (2d) 490.

The power to modify or vacate a particular order with reference to alimony is vested solely and exclusively in the court which issued the order. *Porter v. Porter,* 246 S. C. 332, 143 S. E. (2d) 619.

The principal, if not the only, issue made by the pleadings was whether or not the appellant wife had in fact remarried. The respondent husband did not seek to prove a ceremonial marriage by the wife, but only to prove her common law marriage to one Jesse M. Swygert.

Judge Mason did not find as a fact that the wife had remarried and indicated his unwillingness or inability to so find by the following language,

"Although the court cannot say that a legal and binding contract of marriage exists between the said Mae B. Jeanes and Jesse M. Swygert, it is clear * * *."

He went on, however, to find that these parties had been living together in the same abode for more than two years; that they had both held themselves out to be husband and wife, and that the appellant had deliberately given false and misleading testimony to cover or hide her illicit relationship with the said Jesse M. Swygert. The Judge then concluded

that such conduct of the appellant wife justified the court in terminating her alimony payments, independently of whether she had, in fact, remarried.

The briefs of the parties argue at some length the question of whether the court had the power to terminate the alimony of the wife on the ground of misconduct, the court not having found that she had, in fact, remarried, as asserted by the husband. No South Carolina case in point on this question has been cited and it would appear that the authorities from other jurisdictions are not in complete accord as to whether or not and under what circumstances misconduct of a wife, subsequent to a divorce, will work a forfeiture of her right to alimony. 24 Am. Jur. (2d) 801 *et seq.,* Divorce and Separation, Secs. 685 *et seq.;* Annotation 6 A. L. R. (2d) 859. We do not deem it necessary, however, to discuss or decide this particular question.

We are satisfied that the lower court reached the correct result and under our Rule No. 4, Sec. 8, it is appropriate for us to affirm upon any ground appearing in the record. This is an equitable proceeding and it is well settled that this court has the jurisdiction and the power to find the facts in accord with its view of the preponderance or greater weight of the evidence, at least in the absence of a jury verdict. See cases collected in West's South Carolina Digest, Appeal and Error —1009. Although the lower court was reluctant to so find, we are convinced that a common law marriage of the appellant wife to Jesse M. Swygert was established by the clear preponderance and greater weight of the evidence.

The following facts are either admitted or uncontradicted. The appellant and Swygert had been occupying the same abode for more than two years prior to the hearing below, Swygert not being a boarder or roomer but contributing to the expenses. The Columbia City Directories for the years 1968 and 1969 listed the appellant and the said Swygert as husband and wife residing together. The appellant's Post

Office Box number 333, Cayce, South Carolina, was registered in the .name of Mae Jeanes Swygert as of June 30, 1968. As of June 1, 1967, the records of Swygert's employer listed the appellant as Swygert's wife and she was listed as his wife and beneficiary in a group life insurance policy issued by Aetna Life Insurance Company. Swygert, in 1967 and 1968, listed a wife on his State Income Tax Returns, and on the 1967 return gave his wife's address as P. O. Box 333, Cayce, South Carolina, which, as above noted, is the Post Office Box of the appellant. There is additional evidence of appellant herself telling people that she had married Jesse Swygert and showing her rings, which is, however, denied by appellant.

The foregoing facts are clearly sufficient to support a finding of a common law marriage entered into by and between the appellant and Swygert. There is a strong presumption in favor of marriage by cohabitation, apparently matrimonial, coupled with social acceptance over a long period of time. *In re Greenfield's Estate,* 245 S. C. 595, 141 S. E. (2d) 916.

"A man and woman living together as husband and wife are generally presumed to be married, provided they have acquired a general reputation as a married couple * * *. While the presumption of marriage from cohabitation and reputation is ordinarily a rebuttable presumption, the degree of proof to overcome it is generally very high, especially where the parties have cohabited as husband and wife for a long time * * *." 52 Am. Jur. (2d) 981 *et seq.,* Marriage, Sec. 132.

We quote the following pertinent language from *In re Foel's Estate,* 146 Misc. 428, 263 N. Y. S. 327, 329.

"It was said in *Hynes v. McDermott,* 91 N. Y. 451, at page 459, 43 Am. Rep. 677 : 'The presumption of marriage, from a cohabitation, apparently matrimonial, is one of the strongest presumptions known to the law. This is especially true in a case involving legitimacy. The law presumes moral-

ity, and not immorality; marriage, and not concubinage; legitimacy, and not bastardy. Where there is enough to create a foundation for the presumption of marriage, it can be repelled only by the most cogent and satisfactory evidence.' In *Morris v. Davies* (5 Cl. & Fin. 163) Lord Lyndhurst, speaking of this presumption, says: 'The presumption of law is not lightly to be repelled. It is not to be broken in upon, or shaken by a mere balance of probability. The evidence for the purpose of repelling it must be strong, distinct, satisfactory and conclusive.' In *Piers v. Piers* (2 H. L. Cas. 331) Lord Campbell said, that the presumption could be negatived only 'by disproving every reasonable possibility,' and Lord Brougham, in the same case, approved the general doctrine stated by Lord Lyndhurst, in *Morris v. Davies,* and said that the presumption could be dispelled only by evidence which was 'clear, distinct and satisfactory.' The presumption has been acted upon in several cases in our own courts, and in some recent cases in England, which have a very direct bearing in support of the finding of the jury in this case. See also, *Matter of Grande's Estate,* 80 Misc. 450, 141 N. Y. S. 535; *In re Haffner's Estate,* 254 N. Y. 238, 172 N. E. 483." Cf. *Hallums v. Hallums,* 74 S. C. 407, 54 S. E. 613.

We do not find in the record any strong, cogent, satisfactory or conclusive evidence tending to show that appellant and Swygert are not, in fact, married. The lower court commented on the lack of credibility of the appellant, and we agree. Neither are we impressed with the credibility of Swygert. Both of them swore that they did not live together as husband and wife, and that certain relatives of appellant occupied the household with them. There is convincing proof, however, that such relatives did not live there, and it seems abundantly clear that appellant and Swygert were in fact living together as husband and wife and holding themselves out to the world as such.

Swygert testified, *inter alia,* that while in the Army in Germany, about 1956, he had married a German girl named

"Elsie" in a civil ceremony and had never been divorced. He admitted, however, that he did not list her as his wife or dependent on Army records; he made no attempt to bring her home, and obviously had not seen or heard from her in some thirteen or fourteen years. If, in truth, he ever had a German wife, which is doubtful, for all the record shows she could have long since been dead. In 1966, the said Swygert, in connection with the sale of real property in Calhoun County, signed an affidavit in which he swore that he had never·been married.

Upon the foregoing evidence we have concluded, and find as a fact, that the appellant had in fact remarried, as alleged by the respondent, and it follows that the lower court was warranted in terminating the alimony payments. As above noted, the order of the lower court, *inter alia*, barred the appellant of the right to thereafter seek "alimony, property settlement or benefits whatsoever from the marriage" between the appellant and the respondent. We do not construe the quoted provision as interfering with the appellant's rights under any property settlement or other benefits, other than alimony, theretofore agreed upon or ordered. So construed, we find no error in the judgment of the lower court and the same is accordingly,

Affirmed.

Moss, C. J., Lewis and Brailsford, JJ., concur.

Littlejohn, J., concurs in result.

Littlejohn, Justice (concurring in result).

I concur in the result of the opinion of Mr. Justice Bussey. I would not, however, rule that Mae B. Jeanes and Jesse M. Swygert are now husband and wife by reason of a common law marriage. I am basically in accord with the apparent reasoning of the lower court, which refused to make such a finding. Such a ruling is not necessary to the determination of the issues before the court.

Common law marriages are not recognized at all in many States. Such came into being in order to legitimatize inno-

cent children and adjust property rights between the parties who treated each other the same as husband and wife. Seldom, if ever, should a common law marriage be declared to aid one who is no longer a member of the family, as in this case.

It has not been determined by any court that Swygert is not married to Elsie as testified to by him. If such a marriage took place, then any attempt by Swygert to marry, with the aid of a marriage license or by way of a common law marriage, would be void, and accordingly, the opinion of this court marrying them would be correspondingly void.

The majority opinion holds that Mae B. Jeanes is a common law wife; it necessarily follows that Jesse Swygert is a common law husband, even though he is not a party to this action.

Both Mrs. Jeanes and Mr. Swygert denied under oath that they are married, and specifically dispute that they have intention to enter into that arrangement.

In order to affirm Judge Mason's order it is not necessary for this court to hold that misconduct on the part of a divorced wife entitles a husband to stop payments of alimony. After it was determined by the lower court that a divorce should be granted, it became the duty of the judge to adjust the property rights and settle all disputes relative thereto. The fact that the parties agreed and made a recommendation to the judge which terminated in a decree did not divest the order of its judicial nature. The judge could have accepted the agreement or rejected it or modified it.

We have held in *Porter v. J. H. Hydrick Realty Co.,* 134 S. C. 34, 131 S. E. 768 (1926), that a consent decree may be enforced by contempt proceedings. The agreement, once it became a decree, came to have all the characteristics of a judicial decree conceived in the mind of the judge without consent of the parties.

I would hold that the decree was subject to the provisions of Section 20-116, which is a part of the divorce law of this

State. That section provides that the judge may change the terms of an alimony decree and may terminate alimony when the circumstances of the parties change. It was obviously within the contemplation of the parties and of the judge that support money be given to Mrs. Jeanes until support became available, which would normally be upon her remarriage. She is not technically married, but her relationship with Mr. Swygert is tantamount to marriage and the relationship has continued over more than two years. She has entered into a sphere of living which involves a change of circumstances as contemplated by the legislative act.