THIS OPINION HAS 
 NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN 
 ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
 In The Court of Appeals

 
 
 
 
 Shannon Knox McKinney, Appellant/Respondent,
 
 
 

v.
 
 
 
 
 Larry A. McKinney, Respondent/Appellant.
 
 
 

Appeal From Greenville County
  Robert N. Jenkins, Sr., Family Court Judge

Unpublished Opinion No.  2004-UP-600
 Submitted November 1, 2004  Filed December 3, 2004

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

 
 
 
 
 T. Preston Reid, of Greenville, for Appellant-Respondent.
 Jack D. Griffeth, of Greenville, for Respondent-Appellant.
 
 
 

PER CURIAM:  Shannon Knox and Larry McKinney both appeal from a family 
 court order finding that Knox and McKinney were not married under common law 
 from 1993 to 1998 and that a bifurcated evidentiary trial needed to be held 
 to determine if a common law marriage existed between the parties from 1998 
 to 2002.  We affirm in part, reverse in part, and remand. 
 [1] 
FACTS
 Knox and McKinney were romantically involved and lived together 
 from August 1993 to January 2002.  During that time, neither party maintained 
 a separate residence.  The couple lived in four different homes during the eight 
 years they lived together, including a home they built together in 1996.  McKinney 
 is an electrical engineer and a successful businessman who owns and is a partner 
 in many businesses.  Knox, who has a high school education, was responsible 
 for household duties such as cleaning and buying groceries.  
Knox claims the couple held themselves out as husband and wife to 
 the general public, friends and neighbors, in business relations, and in many 
 organizations with which [the couple was] associated.  She also claims the 
 couple had family memberships at gyms and private clubs, including the Greenville 
 Country Club.  Additionally, Knox asserts the couple held a joint checking account 
 at a local bank.  Further, Knox submitted copies of their water and power contract, 
 listing her as McKinneys spouse.  However, McKinney claims that both parties 
 did not intend to be married and used different names throughout their relationship, 
 including tax returns, bank accounts, and drivers licenses.  McKinney also 
 alleges they used separate names when introducing themselves to others and in 
 written contracts.  McKinney submitted affidavits from 16 individuals who knew 
 the couple and stated that they did not hold themselves out to the public as 
 a married couple.    
In 1998, the couple decided to purchase a condominium in Greenville.  Knox 
 claims that McKinney told her she had to sign a Waiver Agreement before they 
 could close on the condominium.  The Waiver Agreement stated that although 
 [Knox and McKinney] may live together, date and see [each] other on a frequent 
 basis, they are not husband and wife, either legally or by common law.  The 
 agreement further provided that it could be presented [in court] as conclusive 
 and binding evidence that the parties have never been married to each other.  
 Knox claims that McKinney and his attorney pressured her into signing the agreement.  
 She further claims that she did not sign it freely or voluntarily and that she 
 was fraudulently induced to sign it.  McKinney argues that Knox consulted with 
 an attorney before signing the agreement.  The couple separated in January 2002. 
On July 2, 2002, Knox filed a motion for temporary relief and a complaint seeking 
 alimony and equitable distribution of the couples property based on the couples 
 common law marriage.  On August 19, 2002, McKinney filed an answer and a motion 
 to dismiss on the grounds that the parties are not husband and wife, and therefore, 
 the court lacked subject matter jurisdiction.  The motion was heard on August 
 29, 2002.  On September 9, 2002, the family court filed its order finding that 
 Knox and McKinney were not married under common law because of the Waiver Agreement.  
 Thus, the court found it was without subject matter jurisdiction to adjudicate 
 Knoxs claims and dismissed the action under Rule 12(b), SCRCP.  The court further 
 determined that any irregularity in the consummation of the Waiver Agreement 
 should be tested in the Court of Common Pleas.  
On September 16, 2002, Knox filed a motion for a new trial and/or motion to 
 alter or amend judgment, arguing the court erred in finding it did not have 
 subject matter jurisdiction and by denying Knox a full evidentiary hearing as 
 to the existence of a common law marriage.  The motion was heard on October 
 30, 2002.  On December 2, 2002, the family court filed an amended order, finding 
 that it did have subject matter jurisdiction pursuant to section 20-7-420(5) 
 of the South Carolina Code (1985).  The court then found that whether the intent 
 of the parties to remain unmarried changed after January 30, 1998 is 
 a question of fact to be found from evidence showing their mutual intent after 
 that date (emphasis added).  The court granted a bifurcated evidentiary trial 
 limited to determine the existence/non-existence of a common law marriage between 
 the parties after January 30, 1998 (emphasis added).  Knox and McKinney 
 both now appeal.
STANDARD OF REVIEW
 
The issue of common law marriage is a case at law.  
 Richland Memorial Hosp. v. English, 295 S.C. 511, 513, 369 S.E.2d 395, 
 396 (Ct. App. 1988).  In an action at law, on appeal of a case tried without 
 a jury, the findings of fact of the judge will not be disturbed upon appeal 
 unless found to be without evidence which reasonably supports the judges findings.  
 Townes Assoc., Ltd. v. City of Greenville, 266 S.C. 81, 86, 221 S.E.2d 
 773, 775 (1976).  
LAW/ANALYSIS
 

 
On appeal, Knox argues the family court erred in finding she and McKinney were 
 not married under common law before the parties signed the January 30, 1998 
 Waiver Agreement. 
Section 20-7-420(5) of the South Carolina Code (1985) grants the family court 
 exclusive jurisdiction to hear and determine the validity of marriages.  In 
 South Carolina, a common-law marriage exists if the parties intend to enter 
 into a marriage contract.  Barker v. Baker, 330 S.C. 361, 367, 499 S.E.2d 
 503, 506 (Ct. App. 1998).  It is essential to a common law marriage that there 
 shall be a mutual agreement between the parties to assume toward each other 
 the relation of husband and wife.  Cohabitation without such an agreement does 
 not constitute marriage.  Johnson v. Johnson, 235 S.C. 542, 550, 112 
 S.E.2d 647, 651 (1960).  A valid common law marriage requires that the facts 
 and circumstances show an intention on the part of both parties to enter into 
 a marriage contract.  Owens v. Owens, 320 S.C. 543, 545, 466 S.E.2d 
 373, 375 (Ct. App. 1996).  The party claiming a common law marriage must prove 
 it by a preponderance of the evidence.  Yarbrough v. Yarbrough, 280 S.C. 
 546, 551, 314 S.E.2d 16, 18-19 (Ct. App. 1984).  However, direct evidence of 
 the parties intent is not often available, thus the existence of a common-law 
 marriage is frequently proved by circumstantial evidence.  Barker, 330 
 S.C. at 367-368, 499 S.E.2d at 507.  Typically, the circumstantial evidence 
 relied upon to prove a common-law marriage is the amount of time a couple has 
 lived together and whether the couple publicly held themselves out as husband 
 and wife.  Id.  While the presumption of marriage from cohabitation 
 and reputation is ordinarily a rebuttable presumption, the degree of proof to 
 overcome it is generally very high, especially where the parties have cohabitated 
 as husband and wife for a long time.  Owens, 320 S.C. at 546, 466 S.E.2d 
 at 375.  The presumption of marriage can be dispelled only by evidence which 
 is clear, distinct and satisfactory. Id. (quoting Jeanes v. Jeanes, 
 255 S.C. 161, 177 S.E.2d 537 (1970)).  Thus, the family court was required to 
 determine if Knox presented enough evidence of a common law marriage to trigger 
 the presumption.
 
In its order, the family court concluded that Knox had failed to prove that 
 she and McKinney were married under common law from 1993 to 1998.  On appeal, 
 because this is an action at law, we are bound by the family courts findings 
 of fact unless they are without evidence to support them.  The presumption of 
 a common law marriage is triggered by proof of cohabitation and reputation as 
 husband and wife.  Knox stated at both hearings that she needed more time for 
 discovery and requested an evidentiary trial.  By failing to hold a trial, Knox 
 was deprived of her right to put up her own witnesses and cross-examine the 
 witnesses against her. [2]   Thus, the court erred by not 
 holding an evidentiary trial to determine the couples marital status from 1993 
 to 1998.  
On cross appeal, McKinney argues the family court erred in determining that 
 an evidentiary trial should be held to determine if the parties remained unmarried 
 after the January 30, 1998 Waiver Agreement. 
 
 
 Because we hold an evidentiary trial 
 should be held to determine whether Knox and McKinney were married 
 from 1993 to 1998, we affirm the family courts determination that 
 an evidentiary trial should be held to establish the couples status 
 from 1998 to 2002.
 AFFIRMED IN PART, REVERSED IN PART, 
 AND REMANDED.
 
ANDERSON, STILWELL, and SHORT, JJ., concur.

 
 [1] We decide this case without oral argument pursuant 
 to Rule 215, SCACR.
 
 [2] Our supreme court has acknowledged that, [t]he right to confrontation, 
 although historically limited to criminal prosecutions, has been applied 
 in the civil context.  South Carolina Dept of Social Servs. ex rel. 
 Texas v. Holden, 319 S.C. 72, 78, 459 S.E.2d 846, 849 (1995).  In 
 determining when the right to confrontation applies, our supreme court 
 stated, Where important decisions turn on questions of fact, due process 
 requires an opportunity to confront and cross-examine adverse witnesses.  
 Brown v. South Carolina State Board of Education, 301 S.C. 326, 
 329, 391 S.E.2d 866, 867 (1990).