757 S.E.2d 399

**Joshua BELL, Petitioner,**

v.

**PROGRESSIVE DIRECT INSURANCE COMPANY, Respondent.**

**Appellate Case No. 2011–195286.**

**No. 27381.**

Supreme Court of South Carolina.

Heard Feb. 20, 2013.
Decided April 9, 2014.
Rehearing Denied May 7, 2014.

566

568

Gene McCain Connell, Jr., of Kelaher Connell & Connor, PC, of Surfside Beach, for Petitioner.

John Robert Murphy and Ashley Berry Stratton, both of Murphy & Grantland, PA, of Columbia, for Respondent.

C. Mitchell Brown, of Nelson Mullins Riley & Scarborough, LLP, of Columbia, for Amicus Curiae Property & Casualty Insurers Association of America.

William F. Merlin, Jr., of Merlin Law Group, PA, of Tampa, Florida, and J. Jackson Thomas, of Thomas & Brittain, PA, of Myrtle Beach, both for Amicus Curiae United Policy Holders.

Susan F. Campbell, of McGowan, Hood & Felder, LLC, of Columbia, for Amicus Curiae South Carolina Association for Justice.

A. Johnston Cox, Jennifer E. Johnsen, Jennifer D. Eubanks, all of Gallivan, White & Boyd, PA, of Greenville, for Amicus Curiae Allstate Property and Casualty Insurance Company.

Chief Justice TOAL.

The Court granted Joshua Bell's (Petitioner) petition for a writ of certiorari to review the court of appeals' decision affirming the circuit court's grant of summary judgment in favor of Progressive Direct Insurance Company (Progressive). We affirm.

### FACTS/PROCEDURAL BACKGROUND

Petitioner was injured in a car accident on March 31, 2006, while riding as a passenger in a vehicle driven by a co-employee. The liability limits of the at-fault driver were tendered, and there was no underinsured motorist (UIM) coverage on the vehicle in which he was riding. Therefore, Petitioner submitted a claim for UIM benefits under a Progressive insurance policy, issued to Sarah K. Severn, effective from November 4, 2005, until May 4, 2006 (the Policy). At the time of the accident, Petitioner resided with Severn and their child. He described Severn as "his on again off again fiancé."

Both Petitioner's and Severn's names appear on the Declarations Page of the Policy under the heading "Drivers and household residents." (Emphasis removed). Under the heading "Additional information," Severn is listed as the "Named insured."

The Policy generally defines "You" and "Your" to mean:

 a. a person or persons shown as a named insured on the Declarations Page; and

 b. the spouse of a named insured if residing in the same household.

(Emphasis removed). A "Relative" is defined as "a person residing in the same household as you, and related to you by blood, marriage, or adoption. . . . " (Emphasis removed).

Under Part I, entitled "Liability to Others," the Policy sets forth the following Insuring Agreement:

> Subject to the Limit of Liability, if you pay the premium for liability coverage, we will pay damages for bodily injury and property damage for which an insured person becomes legally responsible because of an accident arising out of the:
>
> 1. ownership, maintenance, or use of a vehicle. . . .

(Emphasis removed). Part I defines an "insured person" or "insured persons" as, *inter alia*, "you or a relative with respect to an accident arising out of the ownership, maintenance, or use of a covered vehicle" and "any person with respect to an accident arising out of that person's use of a covered vehicle with the express or implied permission of you or a relative." (Emphasis removed).

Part III of the Policy, which outlines the availability of UIM coverage, states the following:

> Subject to the Limits of Liability, if you pay the premium for [UIM] Coverage, we will pay for damages which an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury sustained by an insured person or due to property damage:
>
> 1. caused by an accident; and
>
> 2. arising out of the ownership, maintenance, or use of an underinsured motor vehicle.

(Emphasis removed). Part III of the Policy further states that "Insured person" and "insured persons" mean, *inter alia*, "you or a relative." (Emphasis removed).

Progressive denied UIM coverage to Petitioner under Part III of the Policy. According to the affidavit filed by Progressive's Claims Injury Operations Manager, "[t]he claim was denied because [Petitioner] did not fall within the terms, provisions and conditions of [the Policy] to qualify for benefits under the [UIM] provisions," as Petitioner "was only listed as

a 'driver' on the policy and not a named insured, nor was he a resident relative of the named insured."

On September 24, 2007, Petitioner sought a declaratory judgment that he was entitled to UIM coverage under the Policy and filed complaint averring causes of action for bad faith and failure to pay benefits. Progressive answered and subsequently filed a motion for summary judgment.

The circuit court held a hearing on the summary judgment motion on October 13, 2008. Petitioner argued that he was listed as a driver and household resident on the Declarations Page of the Policy, and Progressive was aware that he and Severn resided together when he signed up for coverage. Petitioner presented the following questions to the circuit court: (1) whether a "household resident" is also a "named insured" under the Policy language; (2) whether the Policy was ambiguous; and (3) whether Petitioner was a "relative" of Severn for purposes of coverage. Finally, Petitioner also argued he was entitled to coverage under the Policy by virtue of the doctrine of reasonable expectations. Progressive argued that because Petitioner was neither the named insured nor related to the named insured by blood or marriage, he could not recover UIM benefits under the Policy. Moreover, Progressive argued that Petitioner was not Severn's common-law husband.

During the hearing, Progressive submitted a deposition transcript to support its motion for summary judgment. In the transcript, Petitioner stated he and Severn were engaged but "hadn't set a date yet." He explained he proposed to Severn when she was pregnant with their son. To the question of whether they had taken any steps to be married, Petitioner responded, "Verbal agreement and a ring. . . . She's a procrastinator and she didn't—I mean, I didn't think—I mean, the girl supposed [sic] to marry me, she's supposed to be on that, I thought, and so she didn't want to do it so it just progressively got longer." Petitioner stated that they discussed marriage often but Severn never went through with it. In April 2008, well after the accident, Petitioner stated he and Severn ended their engagement, and Petitioner stated he had no intention of entering a relationship with Severn again.[1]

---

1. At the time they ended their engagement, Severn resided in Maryland.

Petitioner stated he paid all of the bills for water, sewer, rent, electricity, clothing, food, and the Internet. At some point while they resided together, Petitioner relinquished his car insurance through Nationwide and became an additional driver on the Policy:

> Well, we was [sic] saving money and stuff so I took—that was insured through Nationwide and I took the insurance off of it so we wouldn't have two insurance bills, so [Severn] made me an additional driver on [the Policy] and I drove her car and we just shared that car. She'd drive me to work and I'd drive her to work and ... I'd use [the car] on the weekend and I drove it all over.

Petitioner stated further that he "called [Progressive] on the phone" because he "had all [Severn's] personal information, my soon-to-be wife," and he "wasn't driving around Myrtle Beach with [his] name not being on her insurance" because he feared he would be arrested for driving without insurance. Petitioner stated,

> I called, gave [Progressive's employee] all my information. They put me down as an additional driver and they told me the premium, how much difference the bill was going to be each month, and then I had to pay more money at the first.

Petitioner paid all the premiums once he became an additional driver on the Policy. To the question, "Did you have any understanding of what that meant, to be an additional driver on the policy?," Petitioner responded, "No. I need a cigarette. I'm getting irritated." The deposition concluded at that point.

On January 14, 2009, the circuit court entered an order granting Progressive's motion for summary judgment, finding Petitioner was not entitled to UIM coverage under the Policy. First, the court found that Petitioner and Severn were not engaged in a common-law marriage based on Petitioner's deposition testimony that he and Severn were engaged at various times, ended their engagement each time, never decided on a date to be married, were no longer engaged, and Severn resided in Maryland, a state that does not recognize common-law marriage. Second, the circuit court rejected Petitioner's argument that he was a "named insured" under the Policy based on the doctrine of reasonable expectations. Finally, relying on *Ex Parte United Services Automobile*

*Association,* 365 S.C. 50, 614 S.E.2d 652 (Ct.App.2005) [hereinafter *Ex Parte USAA],* the circuit court found that because Petitioner was listed as a "driver" on the declarations page of the Policy but not as a "named insured," and the Policy was clear regarding coverage, Petitioner was not entitled to UIM coverage under the Policy based on any ambiguity in the policy language.

The court of appeals affirmed in an unpublished opinion. *See Bell v. Progressive Direct Ins. Co.,* Op. No. 2011–UP–242 (S.C.Ct.App. filed June 23, 2011). The court of appeals held that Petitioner was not an "insured" under the Policy because the Policy explicitly provides for UIM for an "insured person," which it defines as "you or a relative," and Petitioner did not fall within either definition. *Id.* With respect to Petitioner's argument that the Policy was ambiguous, the court of appeals held that the mere fact that the Policy did not define "household resident" did not in itself render the Policy ambiguous. *Id.* (citing *Ex parte USAA,* 365 S.C. at 55, 614 S.E.2d at 654). The court of appeals found that Petitioner and Severn were not engaged in a common-law marriage, as the evidence merely indicated that they were "engaged to be married at some undetermined point in the future" and clearly "did not have a present intent to be married but instead a future intent to be married." *Id.* Finally, the court of appeals refused to adopt the doctrine of reasonable expectations, citing *Allstate Insurance Co. v. Mangum,* 299 S.C. 226, 231, 383 S.E.2d 464, 466–67 (Ct.App.1989).[2] However, assuming the doctrine applied, the court of appeals stated that

> because the doctrine cannot be reconciled with the rule that unambiguous insurance policies are subject to the traditional rules of contract construction, this court is precluded from adopting the doctrine,

---

2. The court of appeals acknowledged that *Mangum* discussed the doctrine of reasonable expectations in *dicta,* but found that the doctrine was not recognized under South Carolina law:

> Admittedly, the court's statement in *Mangum* is not the law of the case; however, the supreme court has consistently held that unambiguous insurance policies are subject to the general rules of contract construction.

*Bell,* Op. No.2011–UP–242 (S.C. Ct.App. filed June 23, 2011) (citations omitted).

as "[s]uch a departure from jurisprudence must be left to our supreme court." *Id.*

Petitioner filed a petition for a writ of certiorari to review the court of appeals' decision, and this Court granted certiorari.[3]

### ISSUES

I. Whether the court of appeals erred in upholding the circuit court's finding that the Policy is not ambiguous?

II. Whether the court of appeals erred in refusing to adopt the doctrine of reasonable expectations and in finding that the doctrine of reasonable expectations was inapplicable to the facts of this case?

III. Whether the court of appeals erred in finding that there was no genuine issue of material fact with respect to whether Petitioner was engaged in a common-law marriage?

### STANDARD OF REVIEW

 Summary judgment should be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), SCRCP; *Lanham v. Blue Cross & Blue Shield of S.C., Inc.*, 349 S.C. 356, 361, 563 S.E.2d 331, 333 (2002) ("An appellate court reviews a grant of summary judgment under the same standard applied by the trial court pursuant to Rule 56, SCRCP." (citation omitted)). "Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law" and "should not be granted even when there is no dispute as to evidentiary facts if there is disagreement concerning the conclusion to be drawn from those facts." *Lanham*, 349 S.C. at 362, 563 S.E.2d at 333 (citations omitted). As in the trial court, "[o]n appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in

---

**3.** The Court accepted *amici curiae* briefs from United Policyholders and the South Carolina Association of Justice (SCAJ) in support of Petitioner, and Property & Casualty Insurers Association of America (Property & Casualty Association) and Allstate Property and Casualty Insurance Company (Allstate) in support of Progressive. *See* Rule 213, SCACR.

and from the evidence in a light most favorable to the non-moving party below." *Id.* (citing *Williams v. Chesterfield Lumber Co.*, 267 S.C. 607, 230 S.E.2d 447 (1976)). "[I]n cases applying the preponderance of the evidence burden of proof, the non-moving party is only required to submit a mere scintilla of evidence in order to withstand a motion for summary judgment." *Hancock v. Mid–South Mgmt. Co., Inc.*, 381 S.C. 326, 330, 673 S.E.2d 801, 803 (2009). Nevertheless, "when the evidence is susceptible of only one reasonable interpretation, summary judgment may be granted." *Brooks v. Northwood Little League, Inc.*, 327 S.C. 400, 403, 489 S.E.2d 647, 648 (Ct.App.1997) (citation omitted).

 In this case, both parties stipulated in the circuit court that the matters under consideration were matters of law for the court. "A suit for declaratory judgment is neither legal nor equitable, but is determined by the nature of the underlying issue." *Felts v. Richland Cnty.*, 303 S.C. 354, 356, 400 S.E.2d 781, 782 (1991). "When the purpose of the underlying dispute is to determine whether coverage exists under an insurance policy, the action is one at law." *Crossmann Cmtys. of N.C., Inc. v. Harleysville Mut. Ins. Co.*, 395 S.C. 40, 46, 717 S.E.2d 589, 592 (2011) (citation omitted). "In an action at law tried without a jury, the appellate court will not disturb the trial court's findings of fact unless there is no evidence to reasonably support them." *Id.* at 46–47, 717 S.E.2d at 592 (citation omitted). However, an appellate court may make its own determinations concerning questions of law and need not defer to the trial court's rulings. *Id.* at 47, 717 S.E.2d at 592.

## ANALYSIS

### I. Contract Ambiguity

 Petitioner argues that he is entitled to coverage under the Policy because its terms are ambiguous, and as such, must be construed in his favor. *See, e.g., Diamond State Ins. Co. v. Homestead Indus., Inc.*, 318 S.C. 231, 236, 456 S.E.2d 912, 915 (1995) ("Ambiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer."). Respondent contends that the court of appeals' case, *Ex parte USAA*, 365 S.C. at 50, 614 S.E.2d at

652, is directly applicable to these facts, and forecloses a finding of ambiguity here. We agree.

In that case, the appellant argued that she should be permitted to stack coverage under the policy at issue because she was listed as an "operator" on the declarations page of the policy.[4] *Id.* at 53, 614 S.E.2d at 653. More specifically, the appellant argued that the term "operator" created an ambiguity as to whether she was a named insured under the policy, and therefore, the ambiguous terms should be resolved in favor of coverage. *Id.* at 54, 614 S.E.2d at 654. Noting that "[t]he majority view is that listing a driver on the declarations page of an insurance policy does not make that person a named insured," the court of appeals found the insured was not entitled to stack under the policy terms. *Id.* at 55, 614 S.E.2d at 654; *see also, e.g., Nationwide Mut. Ins. Co. v. Williams*, 123 N.C.App. 103, 472 S.E.2d 220, 222 (1996) (finding "driver" and "named insured" were not synonymous because to hold otherwise would extend "named insured" beyond its common sense meaning).[5]

Moreover, the court of appeals held that the policy's failure to define the term "operator" in the policy did not cause ambiguity in the policy because "operator" could be defined "according to the usual understanding of the term's significance to the ordinary person." *Ex parte USAA*, 365 S.C. at 55, 614 S.E.2d at 654 (quoting *Mfrs. & Merchs. Mut. Ins. Co. v. Harvey*, 330 S.C. 152, 158, 498 S.E.2d 222, 225 (Ct.App. 1998)). Therefore, because the appellant was listed as an "operator" and not the "named insured" in the policy, the court of appeals denied coverage. *Id.* at 56, 614 S.E.2d at 655.

Using the same reasoning, we find the Policy's terms were not ambiguous. Despite being listed as a "driver" or "household resident," there is no doubt that Petitioner was not a

---

**4.** The named insured under the policy "treated [the appellant] as if she were her daughter and served as her guardian, though it [was] unclear whether a legal adoption ever took place," but it was undisputed that at the time of the accident, the appellant no longer resided with the named insured. *Ex parte USAA*, 365 S.C. at 52, 54, 614 S.E.2d at 652, 653–54.

**5.** The court noted that some jurisdictions have found coverage in this situation under the doctrine of reasonable expectations. *Ex parte USAA*, 365 S.C. at 54, 614 S.E.2d at 654.

"named insured" as defined in the Policy. Because UIM coverage was only available to either "a person or persons shown as a named insured on the Declarations Page" and "the spouse of a named insured if residing in the same household," we find that the Policy unambiguously forecloses UIM coverage to Petitioner.

## II. Doctrine of Reasonable Expectations

In the alterative, Petitioner argues that the Court should extend coverage to Petitioner under the doctrine of reasonable expectations.[6] More specifically, Petitioner argues that his status as a "household resident," which the Policy does not define, is an ambiguous provision which renders the doctrine of reasonable expectations operable based on his reasonable expectations that he had UIM coverage at the time of the accident. Petitioner and supporting *amici* argue that the doctrine embodies established legal principles, developed out of modern contract theory, and is rooted in common law principles. Progressive contends that South Carolina courts do not recognize the doctrine of reasonable expectations, and this Court should not adopt the doctrine because it cannot be reconciled with the general rules of contract construction.

We agree with Petitioner and supporting *amici* that the doctrine of reasonable expectations, in its traditional formulation, identifies a "broader principle underlying the 'cogeries of doctrines' comprising the rules of insurance policy interpretation." (quoting Robert E. Keeton, *Insurance Law: Basic Text* 351 (1971); Robert E. Keeton, *Reasonable Expectations in the Second Decade*, 12 Forum 275 (1976)).[7] Howev-

---

6. Under the doctrine of reasonable expectations, "[t]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." Robert E. Keeton, *Insurance Law Rights at Variance with Policy Provisions: Part One*, 83 Harv. L.Rev. 961, 967 (1970).

7. Most commentators and courts discussing the doctrine agree that the doctrine of reasonable expectations is not at odds with traditional notions of contract interpretation, but a mere extension of these principles and is rooted in several well-established principles of common law:

When the insured's expectation is created by some kind of ambiguity or vagueness in the policy language, syntax, or organization, some-

er, we decline to apply the doctrine where a contract of insurance unambiguously denies coverage under its plain terms.

 South Carolina courts have a long history of formalistic interpretation with respect to all contracts and have repeatedly held that the "[i]nsurance policies are subject to general rules of contract construction," and therefore, we "must enforce, not write contracts of insurance and ... must give policy language its plain, ordinary and popular meaning" and "should not torture the meaning of policy language in order to extend or defeat coverage that was never intended by the parties." *Gambrell v. Travelers Ins. Cos.*, 280 S.C. 69, 70, 310 S.E.2d 814, 816 (1983) (citations omitted); *see also USAA Prop. & Cas. Ins. Co. v. Clegg*, 377 S.C. 643, 655, 661 S.E.2d 791, 797 (2008). Thus, "[w]hen a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used." *B.L.G. Enters., Inc. v. First Fin. Ins. Co.*, 334 S.C. 529, 535, 514 S.E.2d 327, 330 (1999).

 Our jurisprudence does not support the creation of a substantive right in reasonable expectations. However, the

---

thing like the *doctrine of contra proferentem* ... is operating. When the insured's expectation comes from some assertion by an agent of the insurer or through the insurer's advertising, something like the *doctrine of misrepresentation or deceit* is operating. When the insured's expectation is grounded in an assumption that coverage for the loss in question would exist given the amount of premium charged, something like the *doctrine of unconscionability* is operating. When the insured's expectation is part and parcel of the insured's sudden surprise and dismay at the absence of coverage, something like the *doctrine of mistake* is operating. When the insured's expectation comes from the insurer's invitation to the insured to place trust in the insurer that the insured's coverage needs will be satisfactorily met, something like an *estoppel or reliance theory* is operating.
Robert H. Jerry, II, *Understanding Insurance Law* 144–45 (2d ed.1996) (emphasis added) (footnotes omitted); *see also* Arthur L. Corbin, *Corbin on Contracts* 2 (Joseph M. Perillo ed., rev. ed.1993) ("[T]he law of contracts attempts the realization of reasonable expectations that have been induced by the making of a promise."); John E. Murray, Jr., *Murray on Contracts* 671 (3d ed.1990) ("The purpose of contract law is often stated as the fulfillment of those expectations which have been induced by the making of a promise."); Duncan Kennedy, *Form & Substance in Private Law Adjudication*, 89 Harv. L.Rev. 1685, 1715 (1976) ("The rationale for contract is derivative from that of property. The law creates a property in expectations.").

reasonable expectations of parties entering an insurance contract will be honored within the confines of our interpretive rules and fairness principles. *See, e.g., S.C. Farm Bureau Mut. Ins. Co. v. Kennedy,* 398 S.C. 604, 615, 730 S.E.2d 862, 867 (2012) ("Although [the insurer] contends this dispute can be resolved by a literal interpretation of the plain language of 'physical contact,' we disagree, as the Supreme Court of Rhode Island recently observed the literal interpretation of policy language will be rejected where its application would lead to unreasonable results and the definitions as written would be so narrow as to make coverage merely 'illusory.'" (quoting *Empire Fire & Marine Ins. Cos. v. Citizens Ins. Co.,* 43 A.3d 56, 60 (R.I.2012))). To this end, we find the Delaware Supreme Court's reasoning instructive:

> [A] fundamental premise of the doctrine is that the policy will be read in accordance with the reasonable expectations of the insured "so far as its language will permit." Thus, the rule, as recognized by this Court, is consistent with the general rules of construction, to which we have referred, that is, the Court will look to the reasonable expectations of the insured at the time when he entered into the contract if the terms thereof are ambiguous or conflicting, or if the policy contains a hidden trap or pitfall, or if the fine print takes away that which has been given by the large print. *But the doctrine is not a rule granting substantive rights to an insured when there is no doubt as to the meaning of policy language.*

*Hallowell v. State Farm Mut. Auto. Ins. Co.,* 443 A.2d 925, 927 (Del.1982) (emphasis added) (citation omitted); *see also Clark–Peterson Co., Inc. v. Indep. Ins. Assocs., Ltd.,* 492 N.W.2d 675, 677 (Iowa 1992) ("But the doctrine does not contemplate the expansion of insurance coverage on a general equitable basis. The doctrine is carefully circumscribed; it can only be invoked where an exclusion '(1) is bizarre or oppressive, (2) eviscerates terms explicitly agreed to, or (3) eliminates the dominant purpose of the transaction.'" (quoting *Aid (Mut.) Ins. v. Steffen,* 423 N.W.2d 189, 192 (Iowa 1988); *Farm Bureau Mut. Ins. Co. v. Sandbulte,* 302 N.W.2d 104, 112 (Iowa 1981))). This approach is supported by South Carolina law.

■ Thus, while we now hold that reasonable expectations may be used as another interpretive tool, the doctrine cannot be used to alter the plain terms of an insurance policy.[8]

## III. Common–Law Marriage

Finally, Petitioner avers that he is a "relative" of Severn for purposes of UIM coverage under the Policy because they were engaged in a common-law marriage.

■ The existence of a common-law marriage is a question of law. *Campbell v. Christian*, 235 S.C. 102, 104, 110 S.E.2d 1, 2 (1959). The trial court's findings of fact with respect to this question will be upheld if they are supported by any evidence in the record. *Callen v. Callen*, 365 S.C. 618, 623, 620 S.E.2d 59, 62 (2005). The party asserting the marriage bears the burden of proving the commonlaw marriage by a preponderance of the evidence. *Ex parte Blizzard*, 185 S.C. 131, 133, 193 S.E. 633, 634 (1937).

■ "A common-law marriage is formed when two parties contract to be married." *Callen*, 365 S.C. at 624, 620 S.E.2d at 62 (citing *Johnson v. Johnson*, 235 S.C. 542, 550, 112 S.E.2d 647, 651 (1960)). However, "[n]o express contract is necessary;" instead, "the agreement may be inferred from the circumstances." *Id.* (citations omitted). Therefore,

> [t]he fact finder is to look for mutual assent: the intent of each party to be married to the other and a mutual understanding of each party's intent. Consideration is the participation in the marriage. If these factual elements are present, then the court should find as a matter of law that a common-law marriage exists.

*Id.* Moreover, "when the proponent proves that the parties participated in 'apparently matrimonial' cohabitation, and that while cohabiting the parties had a reputation in the commu-

---

8. Regardless, the Record is unclear regarding what expectations Petitioner held with respect to coverage under the Policy. Petitioner testified he added himself to the insurance policy to avoid being arrested for driving without insurance. He also testified he did not have an understanding of what it meant to be listed as a "household resident" under the policy, and did not state he reasonably expected to be covered as a named insured for UIM purposes. Thus, it is unclear how the doctrine would apply under these facts.

nity as being married, a rebuttable presumption arises that a common-law marriage was created." *Id.* (citing *Jeanes v. Jeanes*, 255 S.C. 161, 166–67, 177 S.E.2d 537, 539–40 (1970)). "A party may overcome the presumption by presenting " 'strong, cogent' " evidence that the parties in fact never agreed to marry." *Id.* (quoting *Jeanes*, 255 S.C. at 167, 177 S.E.2d at 540).[9]

In our view, Petitioner's deposition testimony unequivocally confirms that Petitioner and Severn, while cohabitating and sharing domestic and financial responsibilities, were merely *engaged* to be married. Thus, the circuit court and court of appeals' finding that no common-law marriage existed between Petitioner and Severn is supported by the evidence.

Because we find no common-law marriage existed, Petitioner does not meet the definition of "relative" in the Policy, which is defined as "a person residing in the same household as you, and related to you by blood, marriage, or adoption."

---

9. We note that it was the exclusive province of the family court to determine the existence of a common-law marriage in this case. *See Thomas v. McGriff*, 368 S.C. 485, 488, 629 S.E.2d 359, 360 (2006) ("[J]urisdiction to determine the existence of a common-law marriage depends upon the ultimate issue before the court. If the ultimate issue is heirship, which is within the probate court's exclusive jurisdiction, then the probate court has jurisdiction to resolve the threshold issue whether the decedent was a party to a common-law marriage. If the existence of a common-law marriage is itself the ultimate issue, then the family court has exclusive jurisdiction."); *see also* S.C.Code Ann. § 63–3–530(B) (2010) (providing that "[n]otwithstanding another provision of law, the family court and the probate court have concurrent jurisdiction to hear and determine matters relating to paternity, common-law marriage, and interpretation of marital agreements; except that the concurrent jurisdiction of the probate court extends only to matters dealing with the estate, trust, and guardianship and conservatorship actions before the probate court"). Therefore, Petitioner should have sought a declaration of common-law marriage in the family court, and the trial court and court of appeals erred in addressing the issue. However, for purposes of judicial economy we address the merits of the issue here. *See, e.g., Treece v. State*, 365 S.C. 134, 136 n. 1, 616 S.E.2d 424, 425 n. 1 (2005) ("Although this issue should have been appealed to the Administrative Law Court as provided in *Al–Shabazz v. State*, 338 S.C. 354, 527 S.E.2d 742 (2000), we dispose of it for purposes of judicial economy."); *Jeter v. S.C. Dep't of Transp.*, 369 S.C. 433, 441 n. 6, 633 S.E.2d 143, 147 n. 6 (2006) (holding that regardless of any preservation problems, the appellate court would address an issue in the interest of judicial economy).

(Emphasis removed). Therefore, we affirm the court of appeals' finding as to this issue.

## CONCLUSION

Based on the foregoing, the court of appeals' decision is **AFFIRMED.**

BEATTY, KITTREDGE and HEARN, JJ., concur.
PLEICONES, J., concurring in result only.