514 S.E.2d 327

**B.L.G. ENTERPRISES, INC. d/b/a The Alley Bar, Plaintiff,**

**v.**

**FIRST FINANCIAL INSURANCE COMPANY; Connie K. Smith and Larry James; as co-conservators of Tina D. James; and Beverly Ann Wetterman, Defendants,**

**of whom Connie K. Smith and Larry James, as co-conservators of Tina D. James, are Petitioners,**

**and First Financial Insurance Company is Respondent.**

No. 24913.

Supreme Court of South Carolina.

Heard Feb. 2, 1999.

Decided March 8, 1999.

---

530

Steven M. Krause, of Law Offices of Steven M. Krause, P.A., of Anderson, for petitioners.

Phillip E. Reeves and Jennifer E. Johnsen, of Gibbes, Gallivan, White & Boyd, P.A., of Greenville, for respondent.

Robert L. Waldrep, Jr., of Waldrep and Stoddard, of Anderson, for B.L.G. Enterprises, Inc.

BURNETT, Justice:

We granted a writ of certiorari to review the decision of the Court of Appeals in *B.L.G. Enterprises, Inc. v. First Financial Ins. Co.*, 328 S.C. 374, 491 S.E.2d 695 (Ct.App.1997). We affirm.

## *FACTS*

B.L.G. Enterprises, Inc. d/b/a The Alley Bar (BLG), instituted this declaratory judgment action against Respondent First Financial Insurance Company (First Financial) to determine whether First Financial owed it a duty to defend and

indemnify BLG in the underlying tort action brought by Connie K. Smith and Larry James (Conservators) as co-conservators of Tina D. James. Conservators' underlying complaint alleged employees of BLG negligently served Beverly Ann Wetterman alcoholic beverages while she was visibly intoxicated and allowed her to leave the bar and drive a motor vehicle. It is alleged Ms. Wetterman ran a red light and collided with the car being driven by Ms. James, causing Ms. James severe physical and mental injuries.

At the time of the accident, BLG maintained insurance with First Financial. First Financial argued, however, the insurance policy specifically excluded coverage for dram shop liability. Conservators argued 1) an endorsement to the original policy provided dram shop liability coverage or 2) the endorsement created an ambiguity in the policy's coverage and, therefore, the policy is deemed to provide dram shop liability coverage. The master-in-equity ruled in favor of BLG and Conservators. Finding the endorsement did not apply to the dram shop liability exclusion and, hence, did not conflict with the policy, the Court of Appeals reversed. *Id.* The Court granted Conservators' petition for a writ of certiorari.[1]

## ISSUE

Did the Court of Appeals err by holding First Financial had no duty to defend and indemnify BLG in the underlying suit?

## DISCUSSION

At the time of the underlying accident, BLG had insurance with First Financial. The insurance policy consisted of two coverages: "Owners', Landlords', and Tenants' Liability Insurance" and "Completed Operations and Products Liability Insurance." [2] Both coverages describe BLG's premise—operations as "taverns" and products as "tavern." In relevant part, the "Completed Operations and Products Liability Insurance" provides:

---

1. BLG did not participate at the Court of Appeals or in the present petition for a writ of certiorari.

2. Completed operations coverage was excluded.

## COVERAGE A—BODILY INJURY LIABILITY
## COVERAGE B—PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

A.  bodily injury or

B.  property damage

to which this insurance applies, caused by an occurrence, if the bodily injury or property damage is included within the completed operations or the products hazard, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, . . . .

### Exclusions

This insurance does not apply:

(b) to bodily injury or property damage for which the insured may be held liable

(1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or

(2) if not so engaged, as an owner or lessor of premises used for such purposes, if such liability is imposed

(I) by; or because of the violation of, any statute; ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage, or

(ii) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person:

but part (ii) of this exclusion does not apply with respect to liability of the insured as an owner or lessor described in (2) above; [3]

(underline added).

Originally, the insurance policy defined "products hazard" as follows:

---

3.  The "Owners', Landlords' and Tenants' Liability Insurance" provides coverage for: "an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or

"Products hazard" includes bodily injury and property dam-age arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from the premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others;

(underline added).

An endorsement to the policy provides:

### PRODUCTS HAZARD REDEFINED

This endorsement modifies such insurance as is afforded by the policy relating to the following:

### COMPREHENSIVE GENERAL LIABILITY INSUR-ANCE COMPLETED OPERATIONS AND PROD-UCTS LIABILITY INSURANCE

It is agreed that with respect to bodily injury or property damage arising out of the named insured's products manu-factured, sold, handled or distributed

(1) on, from or in connection with the use of any premises described in this endorsement, or

(2) in connection with the conduct of any operation de-scribed in this endorsement, when conducted by or on behalf of the named insured, the definition of "products hazard" is amended to read as follows:

"products hazard" includes bodily injury and property dam-age arising out of (a) the named insured's products or (b) reliance upon a representation or warranty made with re-spect thereto; but only if the bodily injury or property damage occurs after physical possession of such products has been relinquished to others;

### I.

Conservators maintain the dram shop exclusion should not be enforced because it effectively bars all liability coverage for

---

incidental thereto ...." Exclusion h of the "Owners', Landlords' and Tenants' Liability Insurance" is identical to Exclusion b in the "Com-pleted Operations and Products Liability" policy.

injury due to the sale of alcohol which, as a tavern, is the very coverage BLG sought to acquire. They further assert, because BLG is a tavern, the language of the policy and dram shop exclusion is ambiguous and, therefore, should be construed in favor of coverage. We disagree.

It is well settled that an insurer's duty to defend is based on the allegations of the underlying complaint. *Federated Mut. Ins. Co. v. Piedmont Petroleum Corp.*, 314 S.C. 393, 444 S.E.2d 532 (Ct.App.1994). A liability insurer must defend any suit alleging bodily injury or property damage seeking damages payable under the terms of the policy. *Sloan Constr. Co. v. Central Nat'l Ins. Co. of Omaha*, 269 S.C. 183, 236 S.E.2d 818 (1977); *Nationwide Mut. Ins. Co. v. Tate*, 313 S.C. 444, 438 S.E.2d 266 (Ct.App.1993). However, an insurer has no duty to defend an insured where the damage was caused for a reason unambiguously excluded under the policy. *Federated Mut. Ins. Co. v. Piedmont Petroleum Corp.*, supra; *Falkosky v. Allstate Ins. Co.*, 311 S.C. 369, 429 S.E.2d 194 (Ct.App.1993), *aff'd as modified*, 312 S.C. 210, 439 S.E.2d 836 (1993).

Insurance policies are subject to the general rules of contract construction. *Diamond State Ins. Co. v. Homestead Industries, Inc.*, 318 S.C. 231, 456 S.E.2d 912 (1995); *Sloan Constr. Co. v. Central Nat'l Ins. Co.*, supra. This Court must give policy language its plain, ordinary, and popular meaning. *Fritz–Pontiac–Cadillac–Buick v. Goforth*, 312 S.C. 315, 440 S.E.2d 367 (1994). When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used. *C.A.N. Enterprises, Inc. v. S.C. Health & Human Services Finance Comm'n*, 296 S.C. 373, 373 S.E.2d 584 (1988). The court's duty is "limited to the interpretation of the contract made by the parties themselves 'regardless of its wisdom or folly, apparent unreasonableness, or failure [of the parties] to guard their interests carefully.'" 296 S.C. at 378, 373 S.E.2d at 587, *citing Gilstrap v. Culpepper*, 283 S.C. 83, 86, 320 S.E.2d 445, 447 (1984).

Although exclusions in an insurance policy are construed against the insurer, *Boggs v. Aetna Cas. and Sur. Co.*, 272 S.C. 460, 252 S.E.2d 565 (1979), insurers have the right to limit their liability and to impose conditions on their obli-

gations provided they are not in contravention of public policy or a statutory prohibition. *Burns v. State Farm Mut. Auto. Ins. Co.,* 297 S.C. 520, 377 S.E.2d 569 (1989); *Rhame v. Nat'l Grange Mut. Ins. Co.,* 238 S.C. 539, 121 S.E.2d 94 (1961). "Policies providing products liability coverage may contain exclusions, tailored to the business of the particular insured, designed to limit the insurer's risk exposure from hazards peculiar to that business." *Couch on Insurance* 3d, § 130:14 (1997).

■ The policy issued to BLG, a tavern, is not illusory. The Owners', Landlords', and, Tenants' portion of the policy initially provides liability coverage for an occurrence arising out of use of BLG's premises. Exclusion h, however, specifically precludes coverage for bodily injury *"by reason of* the selling, serving or giving of any alcoholic beverage." (underline added). Other coverage, however, remains intact. For instance, the policy provides liability coverage for a patron who slips and falls at the tavern. The policy even provides coverage to an intoxicated patron who slips and falls at the tavern, so long as the slip and fall was not the result of the service of alcohol. *See Excelsior Ins. Co. v. Pomona Park Bar & Package Store,* 369 So.2d 938 (Fla.1979).

Similarly, the Completed Operations and Products Hazard portion of the policy initially provides coverage for products liability, including the distribution of a "defective" alcoholic beverage. Exclusion b, however, specifically precludes coverage for bodily injury *"by reason of* the selling, serving or giving of any alcoholic beverage." (underline added). The policy provides products liability coverage for injury as a result of the service of contaminated food or non-alcoholic beverages.

■ The dram shop exclusion in BLG's policy with First Financial is almost identical to other liquor liability exclusions in insurance policies covering establishments which distribute alcoholic beverages. These exclusions have been uniformly found unambiguous and upheld in numerous jurisdictions. *See Williams v. U.S. Fidelity and Guar. Co.,* 854 F.2d 106 (5th Cir.1988); *Hartford Ins. Co. of Southeast v. Franklin,* 206 Ga.App. 193, 424 S.E.2d 803 (1992); *Morrison on Behalf of Morrison v. Miller,* 452 So.2d 390 (La.Ct.App.1984); *Mitche-*

*son v. Izdepski,* 32 Mass.App.Ct. 903, 585 N.E.2d 743 (1992); *Sheffield Ins. Co. v. Lighthouse Properties, Inc.,* 234 Mont. 395, 763 P.2d 669 (1988); *New Hampshire Ins. Co. v. Hillwinds Inn, Inc.,* 117 N.H. 350, 373 A.2d 354 (1977); *U.S. Fidelity and Guar. v. Griggs,* 341 Pa.Super. 286, 491 A.2d 267 (1985); *Abe's Colony Club, Inc. v. C & W Underwriters, Inc.,* 852 S.W.2d 86 (Tx.Ct.App.1993); *Fraternal Order of Eagles Cle Elum, Aerie No. 649 v. General Accident Ins. Co. of America,* 58 Wash.App. 243, 792 P.2d 178 (1990); *Kelly v. Painter,* 202 W.Va. 344, 504 S.E.2d 171 (1998).[4] Conservators cite no cases to the contrary and we have found no authority to the contrary.[5]

First Financial chose to exclude from coverage bodily injury and property damage by reason of the distribution of alcoholic beverages by BLG. The language in the policy clearly and unambiguously reflects this exclusion. Accordingly, the exclusion should be enforced. *C.A.N. Enterprises, Inc. v. S.C. Health & Human Services Finance Comm'n, supra* (when an insurance policy is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used).

## II.

■■■ Alternatively, Conservators maintain the endorsement provides coverage for bodily injury and property damage arising out of the use of BLG's product, alcoholic beverages, and therefore conflicts with the dram shop exclusion in the original insurance policy. According to Conservators, this

---

4. In *Federated Mut. Ins. Co. v. Piedmont Petroleum Corp., supra,* the Court of Appeals considered whether an insurance company which issued liability coverage with a liquor liability exclusion to a gas station/convenience store was required to defend and indemnify the business against a plaintiff who was injured after a minor purchased alcohol from the business. The legitimacy of the exclusion was not at issue.

5. The policy in this case is distinguishable from an insurance policy issued to a tavern which contained an "absolute liquor exclusion" precluding coverage for bodily injury or damage "arising out of or in connection with the manufacturing, selling, distributing, serving or furnishing of any alcoholic beverages." An absolute liquor exclusion in a policy covering a tavern is illusory. *Monticello Ins. Co. v. Mike's Speedway Lounge, Inc.,* 949 F.Supp. 694 (S.D.Ind.1996).

conflict must be construed against First Financial. We disagree.

> When construing an insurance policy containing an endorsement, the policy and the endorsement are to be read together. The policy remains in full force and effect to the extent its terms are modified by the words of the endorsement. If a provision of the policy conflicts with a provision of the endorsement, the latter controls.

*Long v. Adams,* 280 S.C. 401, 405–6, 312 S.E.2d 262, 265 (Ct.App.1984).[6]

"[U]nder well-established principles [the endorsement] supersedes any inconsistent provision contained in the general terms of the policy and in case of conflict, the endorsement controls." *McIntosh v. Whieldon,* 205 S.C. 119, 127, 30 S.E.2d 851, 854 (1944); *see Couch on Insurance* 3d, § 21:22 ("[W]hile an endorsement is not to be construed more broadly than the fair import of its terms considered in connection with the whole of the policy, ... when ... endorsement modifies, qualifies, or restricts the terms of the original policy, the ... endorsement controls."); 13A J. Appleman *Insurance Law and Practice* § 7537 (1976) (policy and endorsement should be construed together unless they are so much in conflict that they cannot be reconciled; in such case, the endorsement controls).

In this argument, Conservators do not contend the dram shop exclusion does not apply under the original terms of the policy. Instead, they assert the endorsement, by using the language "arising out of the named insured's products," provides liability coverage for personal injury or property damage arising out of the service of alcoholic beverages and thereby eliminates the dram shop exclusion in the original policy.

The only difference between the original policy and the endorsement is that in the former, the definition of products hazard required the bodily injury or property damage to occur away from the premises. Under the definition in the endorsement, there is no such requirement.

---

**6.** *See Couch on Insurance* 3d, § 21:21.

There is no conflict between the original policy and the endorsement. Read in its entirety,[7] the endorsement does not provide liability coverage where the distribution of alcoholic beverages results in bodily injury or property damage. It does not modify, limit, or in any way affect the dram shop exclusion in the original policy. It simply redefines "products hazard." Accordingly, there is no ambiguity between the dram shop exclusion and the endorsement, and no reason for the endorsement to supersede the policy. *See State Auto. Ins. Ass'n v. Young Men's Republican Club of Allegheny County, Inc.,* 663 F.Supp. 1077 (W.D.Pa.1987) (endorsement redefining "products hazard" did not abrogate liquor liability exclusion in insurance policy); *Exchange Ins. Co. v. Mar–Fran Enterprises, Inc.,* 169 Ariz. 187, 818 P.2d 172 (Ct.App.1991) (same); *Continental Western Ins. Co. v. Dam Bar,* 478 N.W.2d 373 (N.D.1991) (same); *see also Smith Jean, Inc. v. Royal Globe Ins. Cos.,* 139 A.D.2d 503, 526 N.Y.S.2d 604 (1988) (products hazard clause did not negate liquor liability exclusion in insurance policy).[8]

Conservators distinguish *State Auto. Ins. Ass'n v. Young Men's Republican Club of Allegheny County, Inc., supra,* and *Smith Jean, Inc. v. Royal Globe Ins. Cos., supra,* on the basis that the policy exclusions in those cases precluded liability coverage for the sale of alcoholic beverages in violation of statute. Conservators distinguish *Exchange Ins. Co. v. Mar–Fran Enterprises, Inc., supra,* on the basis that the insured was a restaurant, rather than a tavern. These distinctions are irrelevant. In all three cases, the courts specifically ruled the endorsements' new definition of "products hazard" did not eliminate the dram shop exclusion.

**AFFIRMED.**

FINNEY, C.J., TOAL, MOORE, and WALLER, JJ., concur.

---

**7.** We note the endorsement is entitled "Products Hazard Redefined."

**8.** The language of First Financial's endorsement is identical to the language of the endorsement in *Exchange Ins. Co. v. Mar–Fran Enterprises, Inc., supra,* and identical to the definition of "products hazard" included in the endorsement in *State Auto. Ins. Ass'n v. Young Men's Republican Club of Allegheny County, Inc., supra.*