**HOUSTON CASUALTY COMPANY,**
Plaintiff—Appellant,

v.

**ST. PAUL FIRE & MARINE INSURANCE COMPANY,**
Defendant—Appellee.

No. 10–1835.

United States Court of Appeals, Fourth Circuit.

Argued: Oct. 25, 2011.

Decided: Dec. 6, 2011.

**ARGUED:** George Trenholm Walker, Pratt–Thomas Walker, PA, Charleston, South Carolina, for Appellant. William Pearce Davis, Baker, Ravenel & Bender, LLP, Columbia, South Carolina, for Appellee. **ON BRIEF:** Clayton B. McCullough, Daniel S. McQueeney, Jr., Pratt–Thomas Walker, PA, Charleston, South Carolina, for Appellant. Jenny A. Draffin, Baker, Ravenel & Bender, LLP, Columbia, South Carolina, for Appellee.

Before DAVIS, KEENAN, and DIAZ, Circuit Judges.

Affirmed by unpublished opinion. Judge KEENAN wrote the opinion, in which Judge DAVIS and Judge DIAZ joined.

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENAN, Circuit Judge:

In this insurance coverage dispute, we consider whether claims in an underlying personal injury suit brought against McGriff, Seibels & Williams, Inc. (McGriff), an insurance broker, were covered under policies issued to McGriff by St. Paul Fire & Marine Insurance Company (St. Paul). Contending that the claims were excluded from coverage, St. Paul refused to participate in McGriff's defense or to contribute to a final settlement of the claims. Thereafter, Houston Casualty Company (Houston), McGriff's professional liability carrier, filed the present suit against St. Paul, claiming that St. Paul improperly denied coverage and seeking contribution.

After the parties filed cross-motions for summary judgment, the district court denied Houston's motion and granted St. Paul's motion. We affirm the district court's judgment.

I.

In 2003, Manuel Salazar suffered catastrophic injuries while working on the Lake Murray Backup Dam Project in South Carolina (the Project). Salazar filed an action against South Carolina Electric & Gas Company (South Carolina Electric), the owner of the power lines that caused his injuries, and against McGriff, the insurance broker for the Project, among other defendants. Only Salazar's claims against McGriff are relevant to the present dispute between Houston, McGriff's professional liability carrier, and St. Paul, which had issued McGriff a commercial general liability policy and related umbrella excess liability policy (collectively, the St. Paul policies). Salazar alleged that in addition to providing insurance brokerage services for the Project, McGriff was responsible for performing inspections at the work site to ensure that it was reasonably safe. Salazar further alleged that McGriff failed to perform such inspections.

The evidence in the record established that McGriff undertook certain safety-related obligations with regard to the Project. McGriff had procured insurance coverage for the Project in the form of an "Owner–Controlled Insurance Program" (OCIP), and, as part of the program, had provided a document entitled "Manual of Insurance Procedures" (OCIP Manual) to

South Carolina Electric and to all contractors working at the Project site.

The OCIP Manual provided that the "Owner's Safety Representative, in conjunction with GENERAL CONTRACTOR and [McGriff], will furnish safety posters, loss and inspection reports and provide overall supervision of the Project Safety effort." Under a heading entitled "Project Safety (Loss Control) Program," the OCIP Manual also stated that: "A Project Safety Program has been established by the General Contractor to conform with industry standards, and to meet the requirements of all Local, State, and Federal standards, and will be supervised and reviewed by the Owner's Safety Representative and [McGriff]."

Houston, McGriff's professional liability carrier, provided a defense to McGriff in the suit brought by Salazar. When McGriff sought St. Paul's participation in the defense, St. Paul declined on the ground that Salazar's claims were not covered under the St. Paul policies. The defendants in the personal injury action ultimately agreed to settle Salazar's claims for $20 million, and McGriff's insurers, including Houston, contributed McGriff's share of $5 million.

Houston later filed the present action in a South Carolina state court, alleging that based on the coverage provided by the St. Paul policies, St. Paul had a duty to defend McGriff and to contribute to the settlement. Thereafter, St. Paul removed the suit to federal court, and the parties filed cross-motions for summary judgment. After the district court ruled on the parties' motions and awarded judgment in favor of St. Paul, Houston timely filed a notice of appeal.

## II.

We review a district court's order granting summary judgment de novo. *Providence Square Assocs., L.L.C. v. G.D.F., Inc.*, 211 F.3d 846, 850 (4th Cir.2000). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a).

Under South Carolina law,[1] insurance policies are subject to general rules of contract construction. *Century Indem. Co. v. Golden Hills Builders, Inc.*, 348 S.C. 559, 561 S.E.2d 355, 358 (2002). Courts are required to interpret the language of an insurance policy according to its "plain, ordinary, and popular meaning." *M & M Corp. of S.C. v. Auto–Owners Ins. Co.*, 390 S.C. 255, 701 S.E.2d 33, 35 (2010). When the language of an insurance policy is "unambiguous, clear, and explicit," courts have the duty to apply the policy terms as stated. *B.L.G. Enters., Inc. v. First Fin. Ins. Co.*, 334 S.C. 529, 514 S.E.2d 327, 330 (1999).

When an insurance policy contains ambiguous language, such language is strictly construed against the insurer. *Am. Credit of Sumter, Inc. v. Nationwide Mut. Ins. Co.*, 378 S.C. 623, 663 S.E.2d 492, 495 (S.C.2008). Likewise, policy exclusions are construed "most strongly" against the insurer. *Id.* However, when exclusionary language in a policy is stated unambiguously, insurers may thereby limit their liability and impose conditions on their obligations, provided that the policy terms do not contravene either a statute or public policy. *B.L.G. Enters.*, 514 S.E.2d at 330. Therefore, if the allegations of liability against an insured unambiguously fall within a policy exclusion, the insurer does

---

1. The parties do not dispute that South Carolina law governs the present issue regarding whether St. Paul had a duty to defend McGriff in the action brought by Salazar.

not have a duty to defend or to contribute to the settlement of the claim. *See id.*

Questions regarding coverage and an insurer's duty to defend a claim brought against its insured are determined based upon the allegations in the plaintiff's complaint. *City of Hartsville v. S.C. Mun. Ins. & Risk Fin. Fund,* 382 S.C. 535, 677 S.E.2d 574, 578 (2009). However, an insurer's duty to defend is not "strictly controlled by the allegations" in the complaint, and "may also be determined by facts outside of the complaint that are known by the insurer." *USAA Prop. & Cas. Ins. Co. v. Clegg,* 377 S.C. 643, 661 S.E.2d 791, 798 (2008).

### III.

We consider whether Salazar's claims were excluded from coverage under the St. Paul policies because they fell within the endorsement entitled "Insurance and Related Work." This endorsement provided, in relevant part:

> Insurance and related work. We won't cover injury or damage or medical expenses for which the protected person may be held liable because of:
>
> ● any obligation assumed by any protected person *in connection with* an insurance contract or treaty; [or]
>
> ● any failure to carry out, or improper carrying out of, *any* contractual or *other duty or obligation in connection with an insurance contract* or treaty.

(Emphasis added.)

Houston argues that the district court erred in concluding that Salazar's allegations against McGriff were based on duties that arose "in connection with" an insurance contract. According to Houston, McGriff's alleged duty to inspect and identify safety problems arose independently of any insurance contract. Thus, Houston argues that Salazar's claims against McGriff were not subject to the Insurance

and Related Work endorsement. Alternatively, Houston asserts that this coverage issue involved disputed issues of material fact. We disagree with Houston's arguments.

The allegations raised in Salazar's complaint fell within the plain language of this policy exclusion. In an introductory paragraph in his complaint, Salazar identified McGriff as "the insurance broker for [South Carolina Electric's] Lake Murray Backup Dam project," and alleged that McGriff "had undertaken a duty to inspect the facility to ensure a reasonably safe environment in which to perform the construction work."

In his negligence claim against McGriff, Salazar alleged that McGriff "undertook a duty to inspect the facility on a regular basis, and to identify and correct any potential safety problems" on the construction site, but was negligent by failing to do so. In his breach of contract claim against McGriff, Salazar similarly alleged that McGriff "contracted with [South Carolina Electric] to inspect the facility on a regular basis and to identify for correction any potential safety problems," and that McGriff breached this contractual obligation. The plain language of these two claims, when considered in conjunction with the introductory paragraph describing McGriff's role as insurance broker for the Project, concerns obligations that McGriff assumed "in connection with" an insurance contract.

Houston argues, nevertheless, that St. Paul was required to defend McGriff against Salazar's claims, because his complaint does not indicate that either cause of action against McGriff depended upon the existence of an insurance contract. According to Houston, the negligence claim was based upon a common law duty arising from a voluntary undertaking, while the breach of contract claim did not refer specifically to an insurance contract.

We find no merit in this argument. The plain language of the endorsement excludes from coverage claims arising from "any failure to carry out, or improper carrying out of, *any* contractual or *other duty or obligation in connection with an insurance contract.*" (Emphasis added). Thus, Salazar's contract claims against McGriff would be excluded from coverage if they concerned an obligation that arose "in connection with" an insurance contract, even though the contract at issue was not itself an insurance contract. Likewise, assuming that Salazar's negligence claim against McGriff was based on a common law duty to perform voluntarily-assumed obligations with reasonable care, that claim still would be excluded from coverage if the duty arose "in connection with" an insurance contract.

In his complaint, Salazar explicitly stated that McGriff was "the insurance broker for [South Carolina Electric's] Lake Murray Backup Dam project, and had undertaken a duty to inspect the facility to ensure a reasonably safe environment in which to perform the construction work." Salazar also alleged that McGriff contracted with South Carolina Electric to inspect the Project and to identify for correction potential safety problems. As the district court concluded, "there is no allegation or suggestion in the complaint that McGriff assumed any safety-related duties except in this role."

Additionally, we observe that certain facts in the record, which were known to St. Paul when it decided to deny coverage, provide further support for the district court's judgment. The OCIP Manual, which McGriff provided to South Carolina Electric and to all contractors at the Project, expressly identified McGriff's safety-related obligations. The Manual provided that the "Owner's Safety Representative, in conjunction with GENERAL CONTRACTOR and [McGriff], will furnish safety posters, loss and inspection reports and provide overall supervision of the Project Safety effort." Further, under the heading entitled "Project Safety (Loss Control) Program," the OCIP Manual provided that "[a] Project Safety Program has been established by the General Contractor to conform with industry standards, and to meet the requirements of all Local, State, and Federal standards, and will be supervised and reviewed by the Owner's Safety Representative and [McGriff]." Because these safety-related obligations assigned to McGriff were set forth in the Manual of Insurance Procedures for the specific insurance program at issue in this case, which McGriff itself had secured, these obligations arose "in connection with" an insurance contract.

Our conclusion is not altered by Houston's further assertion that the OCIP Manual is not a contract. Even if Houston's assertion in this regard is correct, the Manual nevertheless was prepared and provided as a part of the insurance program brokered by McGriff for the Project, and the safety-related obligations assigned to McGriff in the Manual related to the Project. Claims based on those obligations, including the alleged failure to properly perform them, undoubtedly arose "in connection with" an insurance contract, irrespective whether the Manual itself was part of an insurance contract.

Finally, we reject Houston's assertion that any obligations McGriff may have incurred did not stem from an insurance contract but instead arose from a common law duty to perform voluntarily-assumed obligations with reasonable care. This contention ignores that such a duty also necessarily arose "in connection with" an insurance contract, because the obligations undertaken by McGriff were clearly related to the Project and stemmed from McGriff's initial involvement in procuring insurance coverage for it. Moreover, that

McGriff may have assumed these obligations voluntarily does not make them any less connected with an insurance contract.

## IV.

In conclusion, we hold that the district court correctly determined that Salazar's claims were excluded by the Insurance and Related Work endorsement.[2] Therefore, we affirm the district court's judgment determining that St. Paul did not have an obligation to defend McGriff or to contribute to McGriff's portion of the global settlement of Salazar's claims.

*AFFIRMED.*

---

**2.** Because Salazar's claims against McGriff concerned safety-related obligations "in connection with" an insurance contract, and thus were excluded from coverage under the Insurance and Related Work endorsement, we need not address whether such claims were also excluded as "insurance professional services," (Continued) or excluded under the "Appraisers, Inspectors, or Surveyors Professional Services" endorsement.