UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-1770

MARGARET CRAMER,

Plaintiff - Appellee,

v.

NATIONAL CASUALTY COMPANY,

Defendant - Appellant,

and

MARY ANN WALLEY,

Defendant.

Appeal from the United States District Court for the District of South Carolina, at Orangeburg. J. Michelle Childs, District Judge. (5:14-cv-03857-JMC)

Argued: May 10, 2017                    Decided: May 30, 2017

Before WILKINSON, KEENAN, and THACKER, Circuit Judges.

Reversed by unpublished opinion. Judge Wilkinson wrote the opinion, in which Judge Keenan and Judge Thacker joined.

**ARGUED:** John Robert Murphy, MURPHY & GRANTLAND, P.A., Columbia, South Carolina, for Appellant. Robert F. Goings, GOINGS LAW FIRM, LLC, Columbia,

South Carolina, for Appellee.  **ON BRIEF:** Wesley B. Sawyer, Jason P. Luther, MURPHY & GRANTLAND, P.A., Columbia, South Carolina, for Appellant.  Jessica Lee Gooding, GOINGS LAW FIRM, LLC, Columbia, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

WILKINSON, Circuit Judge:

Margaret Cramer seeks a declaratory judgment against National Casualty Company stating that she was "occupying" her work vehicle when she was hit by an underinsured motorist and is consequently entitled to recover under the terms of her employer's insurance policy. The district court entered summary judgment in her favor. We review the decision of the district court de novo and reverse with instructions to enter judgment in favor of National Casualty.

I.

Cramer presents the following facts. She was employed in South Carolina as an emergency medical technician ("EMT") with a non-emergency medical transport company, St. Matthews Ambulance Service, LLC. On September 16, 2013, she and her co-worker were sitting in an ambulance waiting for a patient to complete treatment at a cancer center when they noticed a rear-end automobile accident on an adjacent road. Cramer subsequently activated the emergency lights on the ambulance and maneuvered the vehicle onto the road to block the site of the accident from oncoming traffic. With the engine running, she and her partner exited the vehicle to check on the drivers, both of whom were uninjured.

Cramer then crossed the road to the shoulder of the opposite lane to avoid traffic and call highway patrol. After completing the call, she tried to return to the ambulance and waved through a number of cars to clear the road so she could cross. Her stated purpose in returning to the emergency vehicle was to radio dispatch and notify St. Matthews of the accident. Unfortunately, one of the oncoming vehicles, driven by an

underinsured motorist, hit her as she stood on the shoulder of the road. Cramer estimates that she was eight feet from the ambulance when the collision occurred.

St. Matthews carries an automobile insurance policy from National Casualty providing up to $100,000 in coverage for damage caused by underinsured motorists. Although Cramer was on duty at the time of the accident, National Casualty denied her insurance claim because she was not "occupying" an ambulance as required by the terms of the agreement. "Occupying" is defined in the insurance policy as "in, upon, getting in, on, out or off" of an insured vehicle. J.A. 164–65.

Cramer filed suit seeking a declaratory judgment against National Casualty stating that she was "occupying" the ambulance at the time of the accident and was entitled to recover from the insurance company.[*] Both parties filed motions for summary judgment. The district court granted summary judgment in favor of Cramer, holding that she was "getting in," and therefore "occupying," the ambulance when the collision occurred because she was "engaged in the completion of acts reasonably expected from one 'getting in' the vehicle." *Cramer v. Nat'l Casualty Co.*, 190 F. Supp. 3d 510, 519 (D.S.C. 2016). The district court reasoned that Cramer intended to return to the ambulance at the

[*] Cramer initially filed suit in the South Carolina Court of Common Pleas against both National Casualty and the underinsured motorist. National Casualty invoked the jurisdiction of the United States District Court for the District of South Carolina by removing the action pursuant to 28 U.S.C. § 1441. The district court then severed the claims against the underinsured motorist and remanded them to state court. Federal diversity jurisdiction is proper because Cramer is a citizen and resident of North Carolina, and National Casualty is incorporated in Wisconsin with a principal place of business in Arizona. *See* 28 U.S.C. 1332(a)(1). Any jurisdictional defects caused by the non-diverse underinsured motorist were cured before final judgment was entered. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74–78 (1996).

4

time of the accident and that her conduct and attempt to "get in" the vehicle were reasonable considering the normal use of an emergency vehicle. *Id.* at 518–19. This appeal followed.

II.

In South Carolina, "[i]nsurance policies are subject to the general rules of contract construction." *USAA Prop. & Cas. Ins. Co. v. Clegg*, 661 S.E.2d 791, 797 (S.C. 2008) (quoting *B.L.G. Enters., Inc. v. First Fin. Ins. Co.*, 514 S.E.2d 327, 330 (S.C. 1999)). "Courts must enforce, not write, contracts of insurance, and their language must be given its plain, ordinary and popular meaning." *Id.* (quoting *Sloan Constr. Co., Inc. v. Cent. Nat'l Ins. Co. of Omaha*, 236 S.E.2d 818, 819 (S.C. 1977)). "When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used." *Id.* (quoting *B.L.G. Enters.*, 514 S.E.2d at 330). However, "[a]mbiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer." *Id.* (quoting *Diamond State Ins. Co. v. Homestead Indus., Inc.*, 456 S.E.2d 912, 915 (S.C. 1995)).

In *Whitmire v. Nationwide Mutual Insurance Co.*, 174 S.E.2d 391 (S.C. 1970), the Supreme Court of South Carolina construed an insurance provision analogous to the present case. The court held that a passenger who exited and was in the process of walking around an insured vehicle to reach the adjacent shoulder of the road was "alighting from," i.e., "getting out," and therefore "occupying," the insured vehicle. *Id.* at 393–95. The court explained:

5

> Where the act of alighting is completed is uncertain. It must be determined under the facts of each case, considered in the light of the purpose for which coverage is afforded. Its meaning must be related to the particular use of the automobile and the hazards to be encountered from such use. It is reasonable to conclude that coverage was intended to protect a guest against the hazards from passing automobiles in the vicinity, while the guest . . . is still engaged in the completion of those acts reasonably to be expected from one getting out of an automobile under similar conditions.

*Id.* at 394. The court then emphasized that the claimant "was struck while within two or three feet of the automobile and while he was proceeding promptly to the [adjacent] shoulder of the highway . . . . to remove himself from the hazards from passing vehicles." *Id.* at 395. This is the furthest extension of the term "occupying" by the Supreme Court of South Carolina.

Cramer argues that she was "getting in," and therefore "occupying," the ambulance when she was hit by an underinsured motorist. We need not define the specific contours of "getting in" a vehicle to conclude that a person standing on the shoulder of the road across from an insured vehicle is not "getting in" by any reasonable construction of the phrase. The Supreme Court of South Carolina has long recognized that such provisions "must connote some physical relationship" with the insured vehicle. *McAbee v. Nationwide Mut. Ins. Co.*, 152 S.E.2d 731, 732 (S.C. 1967). Yet Cramer was separated from the ambulance by a lane of traffic and passing cars. She had not even started to cross the street, let alone enter the ambulance. Any latent ambiguity in "getting in" stops short of these facts. At most, Cramer was "getting to" or "approaching" the emergency vehicle, which is beyond the terms of the insurance policy. *Cf. Jarvis v. Pa. Threshermen & Farmers' Mut. Cas. Ins. Co.*, 94 S.E.2d 843, 844 (N.C. 1956)

6

(distinguishing between "entering" and "approaching" an insured vehicle). To hold otherwise would impermissibly torture the plain language of the insurance policy and expand coverage in a manner unintended by the parties. *See Bell v. Progressive Direct Ins. Co.*, 757 S.E.2d 399, 406 (S.C. 2014).

The present case is also well beyond the facts of *Whitmire*. Cramer was separated from the ambulance by a lane of traffic. She was not within two or three feet of the emergency vehicle. She was instead standing on the shoulder of the road in the place of relative safety that *Whitmire* explicitly distinguished. As a result, we conclude that Cramer was not engaged in the completion of acts reasonably expected from one actually getting in a vehicle under similar conditions. *See also* Robert Roy, Annotation, *What Constitutes "Entering" or "Alighting From" a Vehicle Within the Meaning of Insurance Policy, or Statute Mandating Insurance Coverage*, 59 A.L.R.4th 149 (1988 & Supp. 2011).

Cramer urges the court to construe "getting in" to cover persons with the present intent of getting in an insured vehicle coupled with action reasonably anticipated from someone getting in a vehicle under the particular circumstances. As explained above, however, she was not yet engaged in actions reasonably anticipated from someone actually getting in a vehicle. Moreover, South Carolina has already rejected the argument that intent is dispositive of "getting in" a vehicle. *S.C. Prop. & Cas. Guar. Ass'n v. Yensen*, 548 S.E.2d 880, 884 (S.C. Ct. App. 2001).

Cramer also argues that the insurance policy fails to adequately extend coverage as required by statute. South Carolina Code § 38-77-30(7) defines insured persons to

7

include "any person who uses with the consent, expressed or implied, of the named insured the motor vehicle to which the policy applies." This argument, however, overlooks how the statutory term "use" is interpreted throughout the insurance provisions of the South Carolina Code. A party seeking to establish "use" of a vehicle must show that "the vehicle was being used for transportation purposes at the time of the injury." *See Peagler v. USAA Ins. Co.*, 628 S.E.2d 475, 478 (S.C. 2006); *cf. Canal Ins. Co. v. Ins. Co. of N. Am.*, 431 S.E.2d 577, 579 (S.C. 1993) ("We now construe § 38-77-140 and define 'use of a motor vehicle' as limited to transportation uses."). We see no reason to interpret § 38-77-30(7) any differently. It is sufficient to observe that Cramer was not using the ambulance for transportation purposes at the time of the accident, and thus was not "using" the emergency vehicle under South Carolina law.

In the alternative, Cramer lastly argues that she is entitled to recover because she was "upon," "out," or "off," and therefore "occupying," the ambulance. She suggests that "out" and "off" are completely independent from the gerund "getting." In other words, the definition of "occupying" should not be read as "in, upon, getting in, [getting] on, [getting] out or [getting] off" of an insured vehicle. The Supreme Court of South Carolina has been clear, however, that "upon" requires physical contact with the insured vehicle. *Whitmire*, 174 S.E.2d at 394; *see also S.C. Farm Bureau Mut. Ins. Co. v. Kennedy*, 730 S.E.2d 862, 867–88 (S.C. 2012) (clarifying that a person is still "upon" an insured vehicle if contact is "relinquish[ed] . . . in order to attempt to avoid injury"). And the Supreme Court of South Carolina has not adopted Cramer's proposed interpretation of "out" or "off." Severing these terms from "getting" would extend coverage to all persons both

8

"in" and "out," or "upon" and "off," of an insured vehicle—meaning everyone. We decline to read the policy so implausibly. Cramer therefore cannot meet her burden of showing she is entitled to coverage. *See Cooper v. Firemen's Fund Ins. Co.*, 167 S.E.2d 745, 746 (S.C. 1969).

## III.

The judgment of the district court is accordingly reversed and remanded with instructions to enter judgment in favor of National Casualty.

REVERSED