NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2021 VT 79

No. 2021-026

| | |
|---|---|
| Progressive Northern Insurance Company | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Orleans Unit, |
| | Civil Division |
| | |
| Kevin McGrath | June Term, 2021 |

Mary Miles Teachout, J.

Daniel L. Burchard of McCormick, Fitzpatrick, Kasper & Burchard, P.C., Burlington, for
 Plaintiff-Appellee.

Steven A. Adler of Adler & McCabe, PLC, St. Johnsbury, for Defendant-Appellant.


PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.


¶ 1.   **EATON, J.**   Plaintiff-appellant Kevin McGrath challenges the superior court's decision granting summary judgment to appellee Progressive Northern Insurance Company. Specifically, he argues that the court erred in concluding that he was not "occupying" a vehicle, as that term is defined in the insurance policy at issue, when he was struck and injured by an underinsured motorist. We affirm.

¶ 2.   The following facts are undisputed. In the early morning, plaintiff was traveling from his home in Lowell, Vermont, to the Burlington International Airport, to catch a flight. Plaintiff was driving a car with the owner riding in the passenger seat. Plaintiff stopped at a gas station/convenience store in Johnson, Vermont. After pulling up to the pump at approximately

6:28 a.m., plaintiff got out of the car, inserted a credit or debit card into the pump, and began pumping gas. The owner got out of the car and went into the convenience store. At approximately 6:31 a.m., plaintiff finished pumping gas and walked toward the store. , Approximately three minutes later, plaintiff and the owner left the store; they were carrying coffee and walking toward the car with the intention of re-entering and continuing their trip to the airport. When they were about thirty-to-forty feet from the owner's car, a pickup truck struck both plaintiff and the owner.

¶ 3. Plaintiff filed a claim for underinsured motorist (UIM) benefits with the owner's auto insurer, Progressive, asserting that he qualified for coverage under the terms of the policy. By its terms, the policy provides coverage for "damages that an <u>insured person</u> is legally entitled to recover from the owner or operator of . . . an underinsured motor vehicle" because of injuries sustained by an insured person caused by an accident involving the underinsured motor vehicle. The policy defines "insured person" for purposes of UIM benefits to include: (1) the individuals who are named insureds under the terms of the policy—i.e., the owner; (2) "[a]ny person while operating a covered auto with the permission of" a named insured; and (3) "[a]ny person occupying, but not operating, a covered auto."

¶ 4. Plaintiff is not a named insured, so he is only entitled to UIM coverage under the owner's policy if he was "operating" or "occupying" the car under the terms of the policy. The policy does not define the term "operating"; it defines "occupying" to mean "in, on, entering or exiting."

¶ 5. Progressive denied plaintiff coverage under the owner's policy based on its determination that he was not "operating" or "occupying" the car under the terms of the policy. Plaintiff filed suit, and the parties agreed to a declaratory judgment action on stipulated facts; without discovery, they filed cross-motions for summary judgment.

¶ 6. The trial court granted summary judgment to Progressive, concluding that neither "operating" nor "occupying" was ambiguous with respect to an individual who was 30-40 feet

2

from the car. Specifically, the court said that, based on a "common sense lay person's understanding" of those terms, plaintiff "was not controlling the operation of the vehicle at the time, nor was he near enough to be in the process of entering it," and thus plaintiff was not entitled to UIM coverage under the owner's policy.

¶ 7. Plaintiff appeals the trial court's decision, arguing that the court adopted an overly narrow interpretation of the policy language. Specifically, plaintiff argues that modern technology necessitates an understanding of "operating" that takes into account that people can do things incidental to the operation of a car, such as locking or unlocking the doors, or even starting the ignition, from a distance. As to "occupying," plaintiff urges this Court to follow what he argues is the modern trend embraced by a majority of courts and adopt a multi-factorial approach in determining whether he was "occupying" the vehicle in this case.

¶ 8. We review summary judgment decisions applying the same standard as the trial court, and we will uphold the court's ruling if there is no genuine issue of material fact and the prevailing party is entitled to judgment as a matter of law. Ziniti v. New England Cent. R.R., 2019 VT 9, ¶ 14, 209 Vt. 433, 207 A.3d 463; V.R.C.P. 56(a). "The nonmoving party receives the benefit of all reasonable doubts and inferences." Pettersen v. Monaghan Safar Ducham PLLC, 2021 VT 16, ¶ 9, __ Vt. __, 256 A.3d 604 (quotation omitted).

¶ 9. In this case, there are no disputed facts; rather, the parties disagree on the interpretation of the policy terms "operating" and "occupying." "Because an insurance policy is a contract, its interpretation is a question of law, and our review is nondeferential and plenary." Com. Constrs. Endeavors, Inc. v. Ohio Sec. Ins. Co., 2019 VT 88, ¶ 9, 211 Vt. 286, 225 A.3d 247. "Disputed terms must be accorded their plain, ordinary, and popular meaning." Progressive N. Ins. Co. v. Muller, 2020 VT 76, ¶ 11, __ Vt.__, 249 A.3d 24 (quotation omitted). Because the insurer drafts the policy with little effective input from the insured, we construe any ambiguity in policy language against the insurer. Id. "Words or phrases in an insurance policy are ambiguous

3

if they are fairly susceptible to more than one reasonable interpretation." Brillman v. New England Guar. Ins. Co., 2020 VT 16, ¶ 19, 211 Vt. 550, 228 A.3d 636 (quotation omitted).

¶ 10. We conclude that plaintiff was neither "operating" nor "occupying" the car at the time of the accident. We need not decide whether and to what extent remote control of a car's functions constitutes "operating" because the evidence in this case does not support plaintiff's argument. We decline in this case to adopt a specific test for evaluating whether plaintiff was "entering" or "occupying" the car because we conclude that the facts here do not support coverage in any event.

## I. Operating

¶ 11. First, we reject plaintiff's argument that he was "operating" the car at the time of the accident because it is not supported by the stipulated facts. In his brief, plaintiff argues that he was using a key fob "to do things incidental to the operation of the vehicle." However, the stipulated facts are that the car had a key fob, which allowed plaintiff to control certain parts of the car remotely, that plaintiff locked the vehicle remotely, and that prior to the moment he was hit by the pickup truck, he "was intending to unlock the vehicle remotely as he walked back to the car." There is no evidence that plaintiff was, in fact, unlocking the car remotely while he was walking back to the car or at the time of the accident. Even if we were to apply a definition of "operating" that includes remotely controlling one or more vehicle functions, a mere intention to remotely unlock the vehicle is insufficient to trigger coverage under such a definition.

## II. Occupying

¶ 12. As to plaintiff's principal argument, we agree with the trial court that plaintiff was not "occupying" the car under the terms of the policy. The question for our analysis is whether plaintiff was "entering" the vehicle at the time he was struck. We conclude that the meaning of "entering" may be ambiguous, note the various approaches courts have taken in resolving the

ambiguity, and ultimately decline to adopt a specific test because we conclude that the facts here fall clearly outside any reasonable definition of that term.

¶ 13. Although much of the discussion in the parties' briefs focuses on the meaning of "occupying," that is not the central question in this case. "Occupying" is a defined term in the policy: it means "in, on, entering, or exiting." Because the only plausible theory is that plaintiff was "entering" the car at the time of the accident, we must determine the meaning of "entering" and whether it is ambiguous in this case.

¶ 14. "Entering" in the context of the policy is the present participle of "enter," meaning "to come or go into." Enter, Black's Law Dictionary (11th ed. 2019). "Entering" may be susceptible to more than one reasonable meaning depending on at what point a person is considered to begin the process of "coming or going into" the insured car. See Hartford Underwriters Ins. Co. v. Cincinnati Ins. Co., No. 1:09-CV-00267-JGM, 2011 WL 90319, at *3-4 (D. Vt. Jan. 11, 2011) (holding that terms in definition "in, upon, getting in, out, on, or off" were ambiguous applied to the facts because reasonable people could differ "depending on which point in time one believes the process of embarking began"). In a narrow sense, "coming or going into" may mean the point in time at which an individual crosses the threshold of a car to enter it; but, it may also encompass a broader scope of conduct, including some time leading up to the point when an individual actually crosses the threshold into the car. Because we recognize this ambiguity, we consider the factors other courts have used to determine when conduct constitutes "occupying."

¶ 15. Courts have taken a variety of approaches to construing "occupying" in policies with similar or identical definitions to the policy at issue here. See U.S. Fid. & Guar. Co. v. Goudeau, 272 S.W.3d 603, 606-07 (Tex. 2008) (identifying twelve different tests courts have applied in determining whether a person was "occupying" a covered vehicle under terms of an insurance policy). A few courts apply a narrow definition of "occupying" that requires, at a minimum, that an injured person be in physical contact with the car or partially inside the car. See,

5

e.g., <u>Puente v. Progressive Nw. Ins. Co.</u>, 188 A.3d 773, 781 (Conn. App. Ct. 2018) (applying physical contact requirement where "occupying" defined as "in, on, entering or exiting"). But, most courts apply a broader, multi-factorial approach to determine whether an individual was "occupying," "entering," or "exiting" a vehicle for purposes of insurance coverage. See 2 I. Schermer & W. Schermer, Auto. Liability Ins. § 21:23 (4th ed. 2021).

¶ 16. Plaintiff urges us to adopt a four-part test applied in some jurisdictions. The test requires: (1) a causal connection between the injury and the use of the vehicle; (2) geographic proximity of the injured person to the vehicle; (3) that the injured person be vehicle-oriented rather than highway- or sidewalk-oriented at the time of the accident; and (4) that the injured person be engaged in a transaction essential to the use of the vehicle. See <u>Utica Mut. Ins. Co. v. Contrisciane</u>, 473 A.2d 1005, 1009 (Pa. 1984) (adopting four-part test); <u>Gen. Accident Ins. Co. of Am. v. Olivier</u>, 574 A.2d 1240, 1241 (R.I. 1990) (same). Several other courts have adopted looser variations of this test that consider some combination of the factors stated above or related factors. See, e.g., <u>Torres v. Travelers Indem. Co.</u>, 793 A.2d 592, 593 (N.J. 2002) (applying test that requires "substantial nexus" between insured vehicle and injury and concluding plaintiff was "occupying" where he was returning to his work truck which he had taken to find a missing package, and was struck inches from front of truck); <u>Hudson v. GEICO Ins. Agency, Inc.</u>, 161 A.3d 1150, 1156 (R.I. 2017) ("[A] plaintiff may fail to satisfy a portion of the [four-prong test], but may nonetheless be "occupying" an insured vehicle . . . .").

¶ 17. We decline to adopt a specific test in this case. We recognize, as many other courts have, that a narrow interpretation requiring physical contact with the vehicle is inconsistent with the remedial purpose of underinsured motorist coverage. But we decline to adopt any particular test here because we conclude that, although plaintiff was approaching the car from a distance, there is no ambiguity in this case as to whether he was "entering" it under any reasonable understanding of that term.

6

¶ 18.    Two cases addressing similar factual circumstances without applying particular multi-part tests inform our approach.  In <u>Kreuser by Kreuser v. Heritage Mut. Ins. Co.</u>, a plaintiff had just left work and was standing on a street corner waiting to be picked up by a co-worker.  461 N.W.2d 806 (Wis. 1990).  She was within ten feet of the co-worker's car as it approached her when she was struck by a motorcycle that hit the co-worker's car, then careened into her.  The applicable policy defined "occupying" as "in, on, getting into or out of."  Emphasizing that the plaintiff was "beginning to turn to prepare to enter the vehicle when she was struck," the court concluded that the injury occurred "during the boarding process."  <u>Id</u>. at 809.  Thus, it held that the plaintiff was "getting into" the car under the terms of the policy.  <u>Id</u>.

¶ 19.    The Fourth Circuit similarly considered the distinction between the process of "entering" or "getting into" a car and merely "approaching" in <u>Cramer v. Nat'l Cas. Co.</u>, 690 F. App'x 135, 138-39 (4th Cir. 2017).  There, an emergency medical technician (EMT) was hit by a vehicle while standing on the shoulder of the road separated from her ambulance, to which she was preparing to return after finishing a call.  She intended to get back to the ambulance to dispatch and notify the hospital of an accident, but as she waited on the shoulder of the road, she was hit and suffered injuries.

¶ 20.    The Fourth Circuit considered whether the EMT was "occupying" the ambulance within the terms of the underinsured motorist policy, which included the term "getting in."  It noted that at the time of the accident the EMT was separated from the ambulance by eight feet, including a lane of traffic and passing cars, and that she had not started crossing the road but was in a position of safety.  <u>Id</u>. at 139.  The court expressly rejected that the plaintiff's intent to get in the ambulance was sufficient, concluding that she was not "getting in" the ambulance because she was "not engaged in the completion of acts reasonably expected from one actually getting in a vehicle under similar conditions."  <u>Id</u>.; see also <u>S.C. Prop. & Cas. Guar. Ass'n v. Yensen</u>, 548 S.E.2d 880, 883-84 (S.C. Ct. App. 2001) (rejecting that "intent to occupy" was sufficient to fall within policy

7

definition). Together these cases highlight the elusiveness of a precise definition of "entering" or "getting into" a vehicle. Whether particular conduct amounts to "entering" is a highly fact specific determination.

¶ 21. There is a limit to when a person can reasonably be said to be "entering" a vehicle, and considering the specific facts here, this case falls outside that limit. We recognize that this is a close case. But plaintiff was no longer engaged in pumping gas—he had finished and paid at the pump; he left the car and went into the store to get coffee. He was struck while returning to the car when he was still thirty-to-forty feet away. Under the dissent's view, plaintiff had both intention and action toward entering the vehicle at least at the point when he finished his transaction in the store and turned to go outside, if not earlier.

¶ 22. However, unlike in Kreuser, plaintiff was not engaged in any conduct that could be considered entering the car rather than merely approaching it. While it is clear that plaintiff intended to enter the car, as noted in Cramer, his intent to enter does not fall within the scope of "entering." Cramer, 690 F. App'x at 138-39. For these reasons, we conclude that he was not "entering" the car for purposes of Progressive's UIM coverage.

Affirmed.

FOR THE COURT:

_____
Associate Justice


¶ 23. **REIBER, C.J., concurring and dissenting.** I concur with the majority's conclusion that plaintiff was clearly not "operating" the vehicle as that term is defined in the underinsured motorist (UIM) policy at issue in this case. However, in my view, the term "occupying" is ambiguous when applied to plaintiff's conduct and should accordingly be construed in plaintiff's favor. I therefore respectfully dissent.

8

¶ 24. "Any ambiguities in insurance policies are construed in favor of finding coverage. As with other contracts, the determination of ambiguity is a question of law . . . ." DeBartolo v. Underwriters at Lloyd's of London, 2007 VT 31, ¶ 9, 181 Vt. 609, 925 A.2d 1018 (citation omitted). A contract term is ambiguous if "reasonable people could differ as to its interpretation." O'Brien Bros.' P'ship, LLP v. Plociennik, 2007 VT 105, ¶ 9, 182 Vt. 409, 940 A.2d 692 (quotation omitted). "If a disputed term is susceptible to two or more reasonable interpretations, the ambiguity must be resolved in favor of the insured." Serecky v. Nat'l Grange Mut. Ins., 2004 VT 63, ¶ 17, 177 Vt. 58, 857 A.2d 775.

¶ 25. The UIM policy at issue defines "occupying" to mean "in, on, entering or exiting." "Entering" is the definition potentially applicable to the facts of this case. Although the term may seem clear on its face, it contains a latent ambiguity—namely, at what point in time does the process of getting into a vehicle begin?

¶ 26. This ambiguity becomes evident when applied to the facts. The parties agree that plaintiff had stopped for gas and coffee while driving with his girlfriend to the airport, where plaintiff was scheduled to take a flight to Seattle for work. Plaintiff finished pumping gas, went into the gas station to purchase a cup of coffee, and within minutes was walking back to his car with the intention of getting in and continuing his trip to the airport. He had the key fob in his pocket and intended to use it to unlock the doors. At the time of impact, he was not physically touching the car, but he had been driving it for some time, had gotten out briefly to engage in an activity that was necessary to continue using the car, and was returning to the car with the intention of getting in and continuing his trip. He was approximately two car lengths away from the vehicle when he was hit.

¶ 27. All of plaintiff's actions were part of a chain of events that was connected to his occupancy of the vehicle, and his conduct just prior to impact was consistent with beginning the boarding process. In my opinion, a reasonable person could view plaintiff's conduct as "entering,"

9

and therefore "occupying," the vehicle for purposes of UIM coverage. Courts in other jurisdictions have reached the same conclusion in cases with similar facts. See Hudson v. GEICO Ins. Agency, Inc., 161 A.3d 1150, 1160 (R.I. 2017) (holding that passenger who had exited car and crossed parking lot of store and two lanes of traffic to render aid to victims of collision when she was struck by another vehicle, was "occupying" vehicle for purposes of uninsured motorist coverage); State Farm Mut. Auto. Ins. Co. v. Mizuno, 475 P.3d 1184, 1189 (Haw. 2020) (holding that plaintiff who had parked across street from post office, walked to post office to put bills in mailbox, and was starting to cross street back to car when he was struck by unidentified driver, was "occupying" car for purposes of uninsured motorist policy).

¶ 28.    The majority acknowledges that the term "entering" "may be susceptible to more than one reasonable meaning depending on at what point a person is considered to begin the process of 'coming or going into' the insured car." Ante, ¶ 14. Under the specific facts of this case, however, the majority reasons that there is no ambiguity because plaintiff was thirty-to-forty feet away from the car. The majority announces that "there is a limit to when a person can reasonably be said to be 'entering' " a car, but leaves us to guess at what that limit is. Ante, ¶ 21. The most salient fact appears to be plaintiff's distance from the car. But under that analysis, at what point does a person cross the threshold into "entering" the vehicle—twenty feet? Ten feet? Unless we are to adopt the stringent physical-contact test adopted by some courts—an approach that the majority apparently rejects—answering this question necessarily requires us to look at the totality of the circumstances in a particular case. The majority's analysis leaves courts without guidance as to how to interpret similar provisions in the future.

¶ 29.    The majority states that plaintiff "was not engaged in any conduct that could indicate he was entering the car rather than merely approaching it," and reasons that plaintiff's conduct was therefore distinguishable from that of the plaintiff in Kreuser by Kreuser v. Heritage Mut. Ins. Co., 461 N.W.2d 806 (Wisc. Ct. App. 1990). Ante, ¶ 22. In Kreuser, the court found

10

that the plaintiff was "occupying" the car, despite being ten feet away, because she had "started to turn so that she would be in a position to enter" the car when she was struck by a motorcycle. 461 N.W.2d at 807. But the majority ignores the fact that in Kreuser, the driver of the car was pulling up behind the plaintiff so that she could enter his car from the side of the road; because the road ran parallel to the curb, it makes sense that the plaintiff would turn to enter. Id. In this case, plaintiff was walking directly towards the car, which he had exited only minutes before, and was returning with the intention of traveling the rest of the way to the airport. He did not have to turn because he was already facing the car. I therefore fail to see how plaintiff's conduct toward the car is meaningfully distinguishable from that of the plaintiff in Kreuser. To the contrary: in both cases, the plaintiffs were "vehicle-oriented" and were beginning to prepare to board when they were struck. Id. at 808.

¶ 30.    The majority also relies on Cramer v. National Casualty Co., 690 F. App'x 135 (4th Cir. 2017), an unpublished Fourth Circuit decision interpreting South Carolina law, to support its decision. Ante, ¶ 19. But the facts of Cramer, unlike those of Kreuser, are meaningfully distinguishable from plaintiff's case. In Cramer, the plaintiff, an emergency medical technician, was standing approximately eight feet away from her ambulance on the shoulder of the road, across a lane of traffic. She was waiting for cars to pass so that she could return to her vehicle and radio dispatch about an accident. She had not yet started to cross the street when she was struck by an underinsured motorist. The court found that the plaintiff was not "getting in" the vehicle for the purpose of the UIM policy because regardless of her intent, "she was not yet engaged in actions reasonably anticipated from someone actually getting in a vehicle." 690 F. App'x at 139. Here, by contrast, we have intention and action: plaintiff was walking toward the car with the intention

11

of boarding and was about to unlock it when he was hit. I therefore find the majority's reliance on Cramer unpersuasive.[*]

¶ 31. As the majority acknowledges, courts from other jurisdictions have struggled to interpret the term "occupying" in UIM insurance contracts and have taken widely varying approaches to resolve the issue. Compare Testone v. Allstate Ins. Co., 328 A.2d 686, 691 (Conn. 1973) (requiring person to be in physical contact with vehicle to be "occupying" it), with Utica Mut. Ins. Co. v. Contrisciane, 473 A.2d 1005, 1009 (Pa. 1984) (holding that person is "occupying" vehicle if there is causal connection between injury and use of vehicle, person is in "reasonably close" proximity to vehicle, person is oriented toward vehicle, and person is engaged in transaction essential to use of vehicle). In fact, the Texas Supreme Court identified a whopping twelve different tests used by different states over the decades to determine whether a person is "occupying" a car. U.S. Fid. & Guar. Co. v. Goudeau, 272 S.W.3d 603, 606-07 (Tex. 2008). "That courts have differed so widely in interpreting this policy language, which is clear on its face, but is subject to competing interpretations when courts attempt to apply the definition to facts, demonstrates the latent ambiguity." Hartford Underwriters Ins. Co. v. Cincinnati Ins. Co., No. 1:09-CV-00267-JGM, 2011 WL 90319, at *5 (D. Vt. Jan. 11, 2011). Because "the insurer is in a far better position to avoid latent ambiguity in the text of a policy," we should resolve this ambiguity in favor of plaintiff. Sanders v. St. Paul Mercury Ins. Co., 148 Vt. 496, 500, 536 A.2d 914, 916 (1987).

---

[*] Notably, the trial court in Cramer had ruled in favor of the plaintiff because it found that her intent to get in the vehicle was clear and her route back to the vehicle was direct. It stated that "[t]o find otherwise would require plaintiffs, whose use of insured vehicles requires them to occasionally be in or near a roadway, to walk into traffic and put themselves in harm's way in order to insure that their actions can be construed as 'getting in' the insured vehicle," which would be contrary to the remedial purpose of South Carolina's UIM statute. Cramer v. Nat'l Cas. Co., 190 F. Supp. 3d 510, 519 (D.S.C. 2016). The difference of opinion between the courts is further evidence of the ambiguity in the policy language.

¶ 32. Interpreting the contract in plaintiff's favor is consistent with the remedial purpose of Vermont's uninsured/underinsured-motorists statute, which mandates coverage "for the protection of persons insured [thereunder]." 23 V.S.A. § 941(a); see Progressive Cas. Ins. Co. v. MMG Ins. Co., 2014 VT 70, ¶ 11, 197 Vt. 253, 103 A.3d 899 (stating purpose of statute is "to provide the prudent motorist with maximum insurance coverage when involved in an accident with a marginally insured (or uninsured) motorist" (quotation omitted)); Monteith v. Jefferson Ins. Co. of N.Y., 159 Vt. 378, 382, 618 A.2d 488, 490 (1992) (noting "broad, remedial purpose" of UM statute). The insurer, which drafts the policy language, can limit coverage to individuals who fall within the definition of an insured person without violating the statute. Norman v. King, 163 Vt. 612, 615, 659 A.2d 1123, 1125 (1995) (mem.). But if the insurer does not define who qualifies as an insured person in unambiguous language, we ought to take a broad view of the coverage afforded by the policy. See Hudson, 161 A.3d at 1155 ("[W]here the policy provision under examination relates to the inclusion of persons other than the named insured within the protection afforded, a broad and liberal view is taken of the coverage extended." (quotation omitted)). Because the terms "entering" and "occupying" contain a latent ambiguity that is well-recognized and could reasonably be interpreted to apply to the conduct here, I would interpret them in plaintiff's favor. I therefore respectfully dissent.

¶ 33. I am authorized to state that Justice Robinson joins this concurrence and dissent.

_____
Chief Justice